# FORSYTH *v.* HAMMOND.

## CERTIORARI TO THE COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 615.   Argued January 20, 1897. —Decided April 19, 1897.

Under the judiciary act of March 3, 1891, c. 517, the power of this court in certiorari extends to every case pending in the Circuit Courts of Appeals and may be exercised at any time during such pendency, provided the case is one which, but for this provision of the statute, would be finally determined in that court.

While this power is coextensive with all possible necessities, and sufficient to secure to this court a final control over the litigation in all the courts of appeal, it is a power which will be sparingly exercised, and only when the circumstances of the case satisfy this court that the importance of the question involved, the necessity of avoiding conflict between two or more courts of appeal, or between courts of appeal and the courts of a State, or some matter affecting the interests of the Nation, in its internal or external relations, demands such exercise.

As, in the contests between the parties to this suit, the Circuit Court of Appeals for the Seventh Circuit and the Supreme Court of the State of Indiana had reached opposite conclusions as to their respective rights, and as all the unfortunate possibilities of conflict and collision which might arise from these adverse decisions were suggested when this application for certiorari was made, it seemed to this court that, although no final decree had been entered, it was its duty to bring the case and the questions here for examination at the earliest possible moment.

The plaintiff in error having voluntarily commenced an action in the Supreme Court of the State to establish her rights against the city of Hammond, and the questions at issue being judicial in nature and within the undoubted cognizance of the state court, she cannot, after a decision by that court be heard in any other tribunal to collaterally deny its validity.

Though the form and causes of action be different, a decision by a court of

competent jurisdiction in respect to any essential fact or question in one action is conclusive between the parties in all subsequent actions.

The matter of the territorial boundaries of a municipal corporation is local in its nature, and, as a rule, is to be finally and absolutely determined by the authorities of the State.

The construction of the constitution and laws of a State by its courts is, as a general rule, binding on Federal courts.

The case of *Burgess* v. *Seligman*, 107 U. S. 20, distinguished from this case.

THE legislation of Indiana authorizes the annexation of contiguous territory to the limits of a city with or without the consent of the owner. The statutory provisions in respect thereto, found in 1 Horner's An. Ed. Ind. Stat. 1896 are printed in the margin.[1]

---

[1] 3195. EXTENSION OVER PLATTED LOTS — 84. Whenever there shall be or may have been lots laid off and platted adjoining such city, and a record of the same is made in the recorder's office of the proper county, the common council may, by a resolution of the board, extend the boundary of such city so as to include such lots; and the lots thus annexed shall thereafter form a part of such city and be within the jurisdiction of the same. The common council shall immediately thereafter file a copy of such resolution, defining the metes and boundaries of such addition, in the office of the recorder aforesaid; which shall be recorded.

3196. EXTENSION OVER CONTIGUOUS LANDS — ACTION OF COUNCIL — 85. The limits of any city may be extended over any lands or contiguous territory, by the consent of the owner thereof in writing, and a resolution of the common council, passed by a two-thirds vote, extending the limits of such city over such lands or territory; which written consent and resolution shall be entered at length in the records of such city; and the common council shall cause a certified copy of both to be recorded in the recorder's office of the proper county. If any city shall desire to annex contiguous territory not laid off in lots, and to the annexation of which the owner will not consent, the common council shall present to the board of county commissioners a petition setting forth the reasons of such annexation, and, at the same time, present to such board an accurate description, by metes and bounds, accompanied with a plat of the lands or territory proposed or desired to be annexed to such city. The common council shall give thirty days' notice, by publication in some newspaper of the city, of the intended petition, describing in such notice the territory sought to be annexed.

3197. PROCEEDINGS BY COUNTY BOARD — 86. The board of county commissioners, upon the reception of such petition, shall consider the same, and shall hear the testimony offered for or against such annexation; and if, after inspection of the map and of the proceedings had in the case, such board is of the opinion that the prayer of the petition should be granted, it shall cause an entry to be made in the order book, specifying the territory

The city of Hammond is situated in the county of Lake, and in 1893 it instituted proceedings to extend its limits over a large tract of contiguous territory, some of which at least was not laid off and platted into lots. The application was denied by the board of county commissioners of Lake County, whereupon the city appealed to the Circuit Court of that county, and the case thus appealed was thereafter transferred by change of venue to the circuit court of Porter County, Indiana, which court, upon the verdict of a jury, entered a decree in favor of the city for the annexation of the territory.

The present plaintiff was a party to these proceedings. She was the owner of about seven hundred and twenty-five acres within the area attempted to be annexed. After the decision

annexed, with the boundaries of the same according to the survey; and they shall cause an attested copy of the entry to be filed with the recorder of such county, which shall be duly recorded in his office, and which shall be conclusive evidence of such annexation in all courts in this State.

3243. APPEAL FROM COUNTY BOARD — 1. In proceedings before the board of county commissioners for the annexation of territory to cities and towns against the will of the owner, the petitioner and the owner of any portion of the territory proposed to be annexed may appeal to the Circuit Court from the final decision of the board, by filing, within thirty days, with the auditor, a bond or undertaking for the due prosecution of the appeal and payment of all costs that may be adjudged against the appellant, with sureties, to be approved by the board or the auditor. But no appeal shall be dismissed for want of a sufficient bond or undertaking, if one shall be filed, under the direction of the court, at any time before the trial.

3244. AUDITOR'S DUTY — 2. Within twenty days after filing the appeal bond or undertaking, the auditor shall deliver it, with all the other papers in the cause and a complete transcript of the proceedings of the board to the clerk of the Circuit Court, who shall docket it with the other causes pending therein.

3245. TRIAL — 3. The appeal shall stand for trial, when taken during the session of the board, at the first term after the papers shall have been filed ten days, and, when taken in vacation, at the first term after summons shall have been served upon the appellee ten days before the first day of such term. The appeal shall be tried and determined as an original cause.

3246. EFFECT OF APPEAL — 4. All further proceedings in the annexation of territory shall be suspended until the final disposition of the appeal. The court may make a final determination of the proceeding and compel its execution, or may send its decision to the board, with direction how to proceed, and require compliance.

by the circuit court of Porter County the city levied taxes on the property to the amount of $3500, whereupon on April 26, 1895, she filed her bill in the Circuit Court of the United States for the District of Indiana, praying for an injunction to restrain the collection of those taxes. An amended bill was filed on May 1, 1895, upon which amended bill a hearing was had, resulting in a denial of the motion for an injunction and the dismissal of the suit. 68 Fed. Rep. 774. From such dismissal she appealed to the Court of Appeals for the Seventh Circuit, by which court, on January 16, 1896, the decree of the Circuit Court dismissing the bill was reversed, and the case remanded to that court, with directions for further proceedings. 34 U. S. App. 552. Whereupon the city of Hammond applied to this court for a certiorari, directed to the Court of Appeals, which application was sustained, and on October 19, 1896, a certiorari was ordered.

Before the filing of the bill in the United States Circuit Court this plaintiff with others had appealed from the decree of the circuit court of Porter County to the Supreme Court of Indiana, and by that court, on April 11, 1895, the decree had been affirmed. 142 Indiana, 505. A petition for rehearing was denied on November 8, 1895. 142 Indiana, 516. While this decision of the Supreme Court, though announced before the disposition of the case in the United States Circuit Court of Appeals, has not been formally incorporated into the record by an amendment of the pleadings or otherwise, it was made a matter of consideration by the Court of Appeals, and has been discussed and treated by counsel in the arguments before us as a fact in the case and to be considered in determining the questions that are presented.

The bill alleged that the plaintiff's lands were used solely for pasturage and hay and other agricultural purposes; that the real value did not exceed $100 per acre; that the land had no market value, but only one speculative and prospective, dependent upon the location, not yet secured, of manufacturing establishments whose market and offices would be in Chicago; that no part of the land had ever been mapped or platted with a view to the sale of lots; that on the entire

tract there were but twenty-one dwelling houses, ten of them being in a row and within about a quarter of a mile of the town of Whiting, in the county of Lake, in which town the tenants of all said houses were engaged in business and work; that the houses on the lands were four and one half miles distant from any police station, fire-engine house or gas lamp of the city of Hammond, so that in the nature of things no benefit could be received from the municipal government of that city; that the lands were valued for taxation by the city at the rate of $250 to $500 per acre, and the taxes thereon amounted to about $5 per acre; that the valuation was enormously in excess of the real value and the taxes exorbitant, oppressive and extortionate. The bill further alleged that at the time the annexation proceedings were instituted the city of Hammond did not contain more than 6000 or 7000 inhabitants; that it had territory about three miles long by two miles wide; that on the northern boundary and within the limits of the city were about two square miles of lands, no part of which had ever been laid off into lots and blocks, on one of which there was not a single house or road and on the other but seven houses and one road; that this vacant tract was between the settled parts of the city and the lands of the complainant; that the part of the city of Hammond laid off into lots is much larger than is likely to be required for city purposes for many years to come; that the city's boundaries contained nearly four thousand acres, and that the territory attempted to be annexed consisted of about five square miles of practically vacant lands lying directly north of the city limits and extending all the way from such limits to the shores of Lake Michigan. Other facts were alleged also tending to show the impropriety of the annexation of this comparatively vacant territory to the city of Hammond. It was specifically charged that the city of Hammond had a municipal debt amounting to nearly twice the constitutional limit, and that the purpose of the annexation was by adding new property at an exaggerated valuation to so increase the appraised taxables of said city as to lift it out of its constitutional dilemma without regard whatever to the advantages or benefits to the

property so sought to be annexed. The bill further set forth
the proceedings before the county commissioners and in the
state Circuit Court, but averred that those proceedings were
void because the enlargement of the limits of a city was a
matter of legislative and not of judicial cognizance, and
that it was not competent for the legislature to entrust to
the courts the decision of such questions.

*Mr. Benjamin Harrison* and *Mr. W. H. H. Miller* for Mrs.
Forsyth. *Mr. John B. Elam* was on their brief.

*Mr. Charles H. Aldrich* for the city of Hammond. *Mr.
Frank F. Reed* and *Mr. E. W. Crumpacker* were on his brief.

MR. JUSTICE BREWER, after stating the case, delivered the
opinion of the court.

The first proposition of counsel for plaintiff is that the writ
of certiorari was prematurely issued, and that this court could
not at that time rightfully take jurisdiction of the case because
there had been no final decree. The Court of Appeals simply
reversed the decree of the Circuit Court and remanded the
case for further proceedings. This contention involves two
matters: First, the question of power, and second, that of pro-
priety. It may be that the question of propriety should be
considered as foreclosed by the action of the court in award-
ing the writ of certiorari, but the question of power, being
one of jurisdiction, is always open, and must whenever pre-
sented be considered and determined.

This question of power has, indeed, already been decided
by this court in prior cases, *American Construction Company*
v. *Jacksonville, Tampa, &c. Railway Company,* 148 U. S. 372,
383; *The Three Friends,* 166 U. S. 1; but as it has again been
discussed by counsel, a brief reference to those cases and the
reasons therein stated may not be inappropriate. Up to the
time of the passage of the act of 1891, creating the Circuit
Courts of Appeal, the theory of Federal jurisprudence had
been, a single appellate court, to wit, the Supreme Court of

the United States, by which a final review of all cases of which the lower Federal courts had jurisdiction was to be made. It is true there existed certain limitations upon the right of appeal and review, based on the amount in controversy and other considerations; but such limitations did not recognize or provide for the existence of another appellate court, and did not conflict with the thought that this court was to be the single tribunal for reviewing all cases and questions of a Federal nature. The rapid growth of the country and the enormous amount of litigation involving questions of a Federal character so added to the number of cases brought here for review, that it was impossible for this court to keep even pace with the growing docket. The situation had become one of great peril, and many plans for relief were suggested and discussed.

The outcome was the act of March 3, 1891, c. 517, 26 Stat. 826, the thought of which was the creation in each of the nine circuits of an appellate tribunal composed of three judges, whose decision in certain classes of cases appealable thereto should be final. *McLish* v. *Roff,* 141 U. S. 661, 666. While this division of appellate power was the means adopted to reduce the accumulation of business in this court, it was foreseen that injurious results might follow if an absolute finality of determination was given to the Courts of Appeal. Nine separate appellate tribunals might by their differences of opinion, unless held in check by the reviewing power of this court, create an unfortunate confusion in respect to the rules of Federal decision. As the Courts of Appeal would often be constituted of two Circuit Judges and one District Judge, a division of opinion between the former might result in a final judgment where the opinions of two judges of equal rank were on each side of the questions involved. Cases of a class in which finality of decision was given to the Circuit Courts of Appeal might involve questions of such public and national importance as to require that a consideration and determination thereof should be made by the supreme tribunal of the nation. It was obvious that all contingencies in which a decision by this tribunal was of importance could not be foreseen, and so there

was placed in the act creating the Courts of Appeal, in addition to other provisions for review by this court, this enactment:

" And excepting also that in any such case as is hereinbefore made final in the Circuit Court of Appeals it shall be competent for the Supreme Court to require, by certiorari or otherwise, any such case to be certified to the Supreme Court for its review and determination with the same power and authority in the case as if it had been carried by appeal or writ of error to the Supreme Court."

The general language of this clause is noticeable. It applies to every case in which but for it the decision of the Circuit Court of Appeals would be absolutely final, and authorizes this court to bring before it for review and determination the case so pending in the Circuit Court of Appeals, and to exercise all the power and authority over it which this court would have in any case brought to it by appeal or writ of error. Unquestionably, the generality of this provision was not a mere matter of accident. It expressed the thought of Congress distinctly and clearly, and was intended to vest in this court a comprehensive and unlimited power. The power thus given is not affected by the condition of the case as it exists in the Court of Appeals. It may be exercised before or after any decision by that court and irrespective of any ruling or determination therein. All that is essential is that there be a case pending in the Circuit Court of Appeals, and of those classes of cases in which the decision of that court is declared a finality, and this court may, by virtue of this clause, reach out its writ of certiorari and transfer the case here for review and determination. Obviously, a power so broad and comprehensive, if carelessly exercised, might defeat the very thought and purpose of the act creating the courts of appeal. So exercised it might burden the docket of this court with cases which it was the intent of Congress to terminate in the Courts of Appeal, and which, brought here, would simply prevent that promptness of decision which in all judicial actions is one of the elements of justice.

So it has been that this court, while not doubting its power, has been chary of action in respect to certioraries. It has

said: " It is evident that it is solely questions of gravity and importance that the Circuit Courts of Appeal should certify to us for instruction; and that it is only when such questions are involved that the power of this court to require a case in which the judgment and decree of the Court of Appeals is made final, to be certified, can be properly invoked." *Lau Ow Bew, Petitioner,* 141 U. S. 583, 587; *In re Woods,* 143 U. S. 202; *Lau Ow Bew* v. *United States,* 144 U. S. 47, 58; *American Construction Company* v. *Jacksonville Railway Company,* 148 U. S. 372, 383.

We have declined to issue writs of certiorari in cases where, there being only a matter of private interest, there had been no final judgment in the Court of Appeals. *Chicago & Northwestern Railway* v. *Osborne,* 146 U. S. 354. On the other hand, in *The Three Friends,* at the present term, *ante,* 1, we issued a writ of certiorari in a case appealed to the Circuit Court of Appeals before any action had been taken by that court; but this was in view of the fact that the question involved was one affecting the relations of this country to foreign nations, and therefore one whose prompt decision by this court was of importance, not merely for the guidance of the Executive Department of the Government, but also to disclose to each citizen the limits beyond which he might not go in interfering in the affairs of another nation without violating the laws of this.

We reaffirm in this case the propositions heretofore announced, to wit, that the power of this court in certiorari extends to every case pending in the Circuit Courts of Appeal, and may be exercised at any time during such pendency, provided the case is one which but for this provision of the statute would be finally determined in that court. And further, that while this power is coextensive with all possible necessities and sufficient to secure to this court a final control over the litigation in all the Courts of Appeal, it is a power which will be sparingly exercised, and only when the circumstances of the case satisfy us that the importance of the question involved, the necessity of avoiding conflict between two or more Courts of Appeal, or between Courts of Appeal

and the courts of a State, or some matter affecting the interests of this nation in its internal or external relations, demands such exercise.

Among the considerations thus suggested are those which indicate why in this case the court properly exercised its power and issued the writ of certiorari. There was a conflict between the decision of the Circuit Court of Appeals for the Seventh Circuit and the Supreme Court of the State of Indiana. The latter court had declared that the proceedings by which the contiguous territory was annexed to the city of Hammond were legal, and, therefore, that that territory was to be considered by all the officers of the State of Indiana as within the territorial limits of the city. The United States Circuit Court of Appeals by its decision in this case had declared that such annexation proceedings were invalid; and that the property of this petitioner was not within the city limits. This tract of plaintiff's was not on the extreme limit of the lands sought to be incorporated into the city, and if the decision of the Circuit Court of Appeals was enforced there would be a tract of a few hundred acres within the exterior boundaries of the city of Hammond, as defined by the judgment of the Supreme Court of the State, withdrawn from the city's jurisdiction, and in fact excepted from its territorial limits. All the unfortunate possibilities of conflict and collision which might arise from these adverse decisions were suggested when this application for certiorari was made, and, although no final decree had been entered, it seemed to us a duty to bring the case and the question here for examination at the earliest possible moment.

Coming now to the merits of the case it appears that on the pivotal question of the validity of the annexation proceedings the decision of the Supreme Court of the State is one way and that of the Court of Appeals directly the reverse. It is insisted by the plaintiff that the determination of the boundaries of a municipal corporation in the first instance, and any subsequent change in its boundaries by annexation of outside territory, are matters solely of legislative cognizance, and not judicial in their nature; that such

is the general rule obtaining in the several States of the Union and up to the time of the decision of the Supreme Court of Indiana in this controversy, recognized in that State as elsewhere; that, therefore, the judicial proceedings in respect to this controversy in the courts of the State, culminating in the decision of its highest court, were beyond the jurisdiction of such courts, and not to be regarded as creating an adjudication binding upon other tribunals. Article 3 of the state constitution is referred to, which reads: "The powers of the government are divided into three separate departments; the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions. of another, except as in this constitution expressly provided." It is not denied that questions of a judicial nature may grow out of proceedings to annex territory to a municipal corporation, but it is insisted that the annexation itself is a legislative function, and must be determined by direct action of the legislature or some subordinate body exercising legislative functions. The Supreme Court of Indiana in its opinion on the petition for rehearing, 142 Indiana, 516, said: "It may be conceded that annexation of territory to a city is a legislative function. This function is exercised by the common council when it resolves to annex certain described lands to the city, and to present a petition therefor to the county board." This suggestion is vigorously attacked by counsel for plaintiff, as lifting the *ex parte* action of one party to a controversy to the dignity of the exercise of a legislative function and making it the equivalent of a legislative determination.

But back of any criticism of the reasoning of the Supreme Court in its two opinions lies the fact of its decision. And here these things appear. The city of Hammond sought to bring within its limits, among other territory, the lands of plaintiff. After action by the city council, the city instituted proceedings before the county commissioners, which proceedings were subsequently taken by appeal, as prescribed by statute, to the Circuit Court, a court of general jurisdiction, and in that court a decree was entered annexing plaintiff's

lands to the city of Hammond. Were or were not these proceedings valid, and was or was not such decree a binding adjudication which neither the city nor the plaintiff could elsewhere dispute? That question certainly is one of a judicial nature. Now, it is no less a judicial function to consider whether those proceedings and that decree were valid and effective, and determine that they were and operated to annex plaintiff's territory to the city, than to enter upon a like consideration and determine that they were invalid and ineffective to make such annexation. The decision of the Supreme Court of Indiana was in favor of the validity, that of the Court of Appeals against their validity, and if it is judicial to hear and determine one way, it is likewise judicial to hear and determine the other. If action by the state tribunals stopped with the decree of the trial court, it might be said that the plaintiff did not voluntarily seek that forum. She was brought in by appropriate process, and compelled to there litigate the question. But after an adverse decree she insisted that it was not only erroneous but void, and voluntarily commenced an action in the Supreme Court of the State to have that claim established. She invoked the jurisdiction of that court. She summoned the city of Hammond into that forum and there challenged the decree of the Circuit Court, challenged it for error and also for lack of jurisdiction. The questions both of error and of jurisdiction were certainly judicial in their nature and questions within the undoubted cognizance of the Supreme Court. She voluntarily sought its judgment. Can she, after its decision, be heard in any other tribunal to collaterally deny the validity thereof? Does not the principle of *res judicata* apply in all its force? Having litigated a question in one competent tribunal and been defeated, can she litigate the same question in another tribunal, acting independently, and having no appellate jurisdiction? The question is not whether the judgment of the Supreme Court would be conclusive as to the question involved in another action between other parties, but whether it is not binding between the same parties in that or any other forum. The principles controlling the doctrine of

*res judicata* have been so often announced, and are so universally recognized, that the citation of authorities is scarcely necessary. Though the form and causes of action be different, a decision by a court of competent jurisdiction in respect to any essential fact or question in the one action is conclusive between the parties in all subsequent actions. *Cromwell* v. *Sac County*, 94 U. S. 351; *Lumber Co.* v. *Buchtel*, 101 U. S. 638; *Stout* v. *Lye*, 103 U. S. 66; *Nesbit* v. *Riverside Independent District*, 144 U. S. 610; *Johnson Co.* v. *Wharton*, 152 U. S. 252; *Last Chance Mining Co.* v. *Tyler Mining Co.*, 157 U. S. 683.

But there is another aspect of this case. The matter in controversy is one peculiarly within the domain of state control. *Kelly* v. *Pittsburgh*, 104 U. S. 78. It is for the State to determine its political subdivisions, the number and size of its municipal corporations and their territorial extent. These are matters of a local nature, in which the nation, as a whole, is not interested, and in which, by the very nature of things, the determination of the state authorities should be accepted as authoritative and controlling. We do not mean to hold that in the creation or change of municipal boundaries there may not be action taken by the State which involves a trespass upon rights secured by the Federal Constitution; or that in proceedings looking to such change no questions can arise which are of a Federal nature, and in respect to which the judgment of the courts of the nation must be controlling. All that we mean to decide is that the matter of the territorial boundaries of a municipal corporation is local in its nature, and, as a rule, to be finally and absolutely determined by the authorities of the State. The opinion of the Court of Appeals in this case is devoted to questions arising under the state constitution and statutes; and the amended bill filed in the Circuit Court rests the jurisdiction of that court, not upon the existence of any right claimed under the Federal Constitution, but simply on adverse citizenship.

The construction by the courts of a State of its constitution and statutes is, as a general rule, binding on the Federal courts. We may think that the Supreme Court of a State has miscon-

strued its constitution or its statutes, but we are not at liberty to therefore set aside its judgments. That court is the final arbiter as to such questions. In *Claiborne County* v. *Brooks*, 111 U. S. 400, 410, it was said: "It is undoubtedly a question of local policy with each State, what shall be the extent and character of the powers which its various political and municipal organizations shall possess; and the settled decisions of its highest courts on this subject will be regarded as authoritative by the courts of the United States; for it is a question that relates to the internal constitution of the body politic of the State." See also *Burgess* v. *Seligman*, 107 U. S. 20, 33; *Bucher* v. *Cheshire Railroad*, 125 U. S. 555; *Detroit* v. *Osborne*, 135 U. S. 492; *South Branch Lumber Co.* v. *Ott*, 142 U. S. 622; *Kaukauna Co.* v. *Green Bay Co.*, 142 U. S. 254; *McElvaine* v. *Brush*, 142 U. S. 155; *Stutsman County* v. *Wallace*, 142 U. S. 293, quoting *Norton* v. *Shelby County*, 118 U. S. 425, and *Gormley* v. *Clark*, 134 U. S. 338; *Morley* v. *Lake Shore &c. Railroad*, 146 U. S. 162; *Bauserman* v. *Blunt*, 147 U. S. 647; *May* v. *Tenney*, 148 U. S. 60; *Baltimore & Ohio Railroad* v. *Baugh*, 149 U. S. 368, 373; *Lewis* v. *Monson*, 151 U. S. 545; *Balkam* v. *Woodstock Iron Co.*, 154 U. S. 177, quoting *Leffingwell* v. *Warren*, 2 Black, 599, 603.

It may be true that the general rule is that the determination of the territorial boundaries of a municipal corporation is purely a legislative function, but there is nothing in the Federal Constitution to prevent the people of a State from giving, if they see fit, full jurisdiction over such matters to the courts and taking it entirely away from the legislature. The preservation of legislative control in such matters is not one of the essential elements of a republican form of government which, under section 4 of Article 4 of the Constitution, the United States are bound to guarantee to every State in this Union. And whenever the Supreme Court of a State holds that under the true construction of its constitution and statutes the courts of that State have jurisdiction over such matters, the Federal courts can neither deny the correctness of this construction nor repudiate its binding force as presenting anything in conflict with the Federal Constitution.

It is conceded that the judgment of the Supreme Court of Indiana in this controversy could not be reviewed by this court on writ of error; that the questions involved and decided by that court are not of a Federal nature or such as to vest any appellate jurisdiction in this court. But if this court cannot set aside such judgment on the ground of error of law, it would seem to follow that no subordinate Federal court has the power on the same ground to strike it down. What the highest court of the United States cannot do directly would seem to be beyond the reach of a subordinate court in a collateral attack. The case of *Burgess* v. *Seligman, supra,* is largely relied upon in the opinion of the Court of Appeals, but there are several reasons why that authority does not justify its action. In the first place the decision of the Supreme Court of the State was rendered before the filing of this bill in the Circuit Court of the United States, and not as in the *Burgess case* after the judgment in the Circuit Court. In the second place the decision was upon a question of a local nature, involving the internal policy of the State, and therefore is such a decision as should be, generally speaking, recognized and followed by the Federal courts. And, thirdly, it was a final adjudication between the same parties, and should have been respected as binding and conclusive upon the principle of *res judicata.*

For these reasons we think that the decision of the Court of Appeals was erroneous. Its decree will be

*Reversed, and the case remanded to the Circuit Court of the United States for the District of Indiana with instructions to sustain the demurrer to the bill and dismiss the suit.*