# AMERICAN BONDING & TRUST COMPANY *v.* UNITED STATES TO THE USE OF PAYNTER.

APPEAL AND ERROR; ACTIONS; EQUITY; EXECUTORS AND ADMINISTRATORS; PRINCIPAL AND SURETY; DECREES; EXECUTIONS.

1. It is not necessary that it should appear in an application to the lower court for an extension of the time for filing a bill of exceptions, or in an order granting such an extension, that it was for good cause; but the presumption is that the discretion of the court was rightly exercised. Nor is it necessary that such an order should be granted by the same justice who presided at the trial.

2. Whether an action at law is maintainable against the administrator of a deceased joint obligor, or whether a bill in equity will properly lie against him to subject the assets of the estate to the payment of the joint obligation, without first showing the insolvency of the surviving joint obligor, is not necessary to be determined in an action at law against the surety of an administrator, based upon a decree in equity establishing a debt evidenced by a promissory note made by the administrator's intestate and another person as an obligation of the survivor and the administrator, and decreeing its payment, in which equity suit neither defendant raised a question as to the obligation or the right to maintain the suit in equity upon it.

3. Whether a judgment or decree against an administrator is conclusive evidence of the debt in an action against the surety on his bond is not necessary to be determined in an action at law against the surety, based upon such a decree, where the defendant offers no testimony, as the decree is at least prima facie evidence of the debt.

4. *Quære,* whether a decree in equity is an nullity or is simply erroneous which reforms a joint promissory note so as to make it the joint and several note of the makers, although no such relief is prayed for in the bill of complaint, where the note is described in the bill as binding the makers jointly and there is no charge that it had been so drawn through mistake or fraud, although the bill contains certain allegations as to the actual receipt for the joint benefit of the obligors of the money for the loan of which the note was given.

5. In an action against the surety on an administrator's bond, based upon a decree establishing a debt due on a joint promissory note against the administrator of one of the makers and the surviving maker,

proof by the plaintiff that sufficient funds had come into the hands of the administrator, and that he had left the jurisdiction and taken up his residence elsewhere, is sufficient evidence of a breach of the condition of the administrator's bond to justify the direction of a verdict for the plaintiff. (Construing D. C. Comp. Stat. chap. 1, §§ 19, 93, 94, 95.)

6. The requirement of the act of Maryland of 1720 that before an action may be maintained on the bond of an administrator, after the recovery of a judgment against the administrator, execution must have been returned *nulla bona*, is sufficiently satisfied where the return is made the next day after issue upon the order of the plaintiff's attorney. (Following *Mehler* v. *Cornwell*, 3 App. D. C. 92; *Clark* v. *Walter T. Bradley Coal, Lime, & Cement Co.* 6 App. D. C. 437.)

No. 1374.    Submitted March 22, 1904.    Decided May 4, 1904.

HEARING on appeal by the defendant from a judgment of the Supreme Court of the District of Columbia upon a verdict directed by the court in an action on the bond of an administrator.                                        *Affirmed.*

The COURT in the opinion stated the case as follows:

This action was begun by the United States for the use of Kate L. Paynter against the American Bonding & Trust Company, the surety on an administrator's bond.

The declaration alleged that the use plaintiff is the indorsee of a note for $3,000, made by Franklin H. Mackey and Hierome O. Claughton, jointly, to the order of Richard K. Paynter, on May 5, 1897, and payable two years thereafter.

That said Claughton died intestate on August 20, 1897, and by order of the supreme court of the District of Columbia, holding sessions for orphans' court business, Rodolphe Claughton was appointed administrator of his estate, on September 10, 1897, upon the approval of his bond in the sum of $14,000 executed by defendant, the American Bonding & Trust Company, as surety.

That assets amounting to $9,918 came into the hands of said administrator, who filed no account of his administration until required to do so by order of court September 15, 1899, made on petition of said Kate L. Paynter.

That said account, filed October 7, 1899, was referred to the auditor, who reported that sufficient funds had come into the administrator's hands to pay a certain proportion of said note, namely, $2,901.60. That said report was duly confirmed, but that the administrator, who is insolvent, wasted the said assets.

That the said supreme court, in a suit in equity begun by said Paynter against said Mackey and the said administrator and others, passed a decree, on November 14, 1900, reforming the said note and declaring it a joint and several note of the said makers, and decreeing recovery thereon of the said administrator. That execution was issued on said decree against said administrator and said Mackey, and returned unsatisfied.

The defendant entered pleas to the effect that the estate had been properly administered; that it was solvent; that intestate never made the note; that the same was a joint note, and that the estate of Hierome O. Claughton was discharged of liability by his death; and that defendant was not a party to the suit in equity wherein the said note was reformed, and is not bound by the decree therein, etc.

On the trial the plaintiff offered evidence tending to prove the facts alleged in the declaration. The auditor's report was exhibited, showing the sum of $2,901.60 in the hands of the administrator, which plaintiff was entitled to have applied on her said note. The proceedings in the equity suit show a bill filed February 25, 1899, by Kate L. Paynter against Mackey, Rodolphe Claughton in his own right and as administrator, and against certain other persons interested in certain real estate upon which a lien was claimed for the amount of said note. The note is described in the bill as the joint note of the makers, and there is no allegation of mistake in the same, and no special prayer for its correction. It is alleged that the note had been

proved as a claim against the estate, but the administrator had failed and refused to pay it, and also that the personal estate was insufficient to discharge it. The prayers, aside from those relating to the real estate involved, are for a personal decree against Mackey for the debt, and that the real and personal estate of the intestate be subjected to its satisfaction. There was the usual prayer for general relief. The answers of the administrator and defendant Mackey substantially admit the allegations of this bill, denying only certain allegations of fraud therein. An interlocutory decree was entered May 29, 1900, ordering the sale of certain land described in the bill, unless defendants should in thirty days make payment of the amount of the note sued on. And it was provided that, in case of failure of the proceeds of sale to discharge the same, the complainant might apply for such other order or decree as may be proper, etc.

A supplemental bill was filed November 5, 1900, in which it was alleged that a prior lien upon the property would more than consume the value of the said land, and that the trustees appointed to sell had failed to receive a bid for the same, and a further prayer was that an additional decree be passed holding Mackey and the estate of H. O. Claughton liable for the debt, etc.

The final decree of November 14, 1900, reformed the note, making it read as the joint and several note of the makers, and awarded recovery thereon against both Mackey and the administrator for the same, besides costs of suit, for which execution was ordered against each. Execution was issued against them jointly on November 27, 1900, for $2,272.33, which was the amount remaining due after allowing a credit for a payment. By order of complainant's solicitor this was returned, November 28, 1900, *nulla bona.*

It was then further shown by the auditor's final report, that had been adopted by the probate court, that the amount of $1,166.80 remained due plaintiff by the administrator, who had in the meantime removed to the State of New York.

No evidence having been offered by the defendant, the jury

were directed to return a verdict for the plaintiff for said amount.

Defendant excepted to this direction and has appealed from the judgment rendered on the verdict so returned.

*Mr. G. E. Hamilton* and *Mr. M. J. Colbert,* for the appellant:

1. The decree in the equity cause, so far as it undertakes to reform the note in controversy, was utterly null and void, and was manifestly the result of collusion. The bill never made any such claim. There was no proof that the note was made a joint note by mistake or misapprehension, and the decree, therefore, to this extent, was wholly inoperative. Where a bill charges actual and intended fraud and prays for relief on that ground, the complainant cannot, under the prayer for general relief, rely on circumstances which may amount to a case for relief under a distinct head of equity, although those circumstances substantially appear in the bill, but are charged in aid of actual fraud. *Eyre* v. *Potter,* 15 How. 42; *Fisher* v. *Boody,* 1 Curt. (C. C.) 206; *Clarke* v. *Krause,* 2 Mackey, 559. *Morrison* v. *Shuster,* 1 Mackey, 190, decides that under a prayer for general relief the complainant can only claim relief of the same general nature as that prayed in the bill. *Connolly* v. *Belt,* 5 Cranch C. C. 405, decides that a complainant is not entitled, under the prayer for general relief, to a decree inconsistent with the case made by the bill. Example of bill with double aspect, *Yates* v. *Alden,* 5 Cranch C. C. 526. *Lamon* v. *McKee,* 18 D. C. 446, decides that relief will not be granted to a plaintiff in equity in respect to a case disclosed by the answer, or other pleadings in a cause subsequent to the bill, but which was not stated in the bill as a part of the plaintiff's case. It has been uniformly held that a court of equity cannot grant relief that is not prayed for in the bill, and where the relief is of an entirely different character from that which is embraced in the scheme of the bill, merely because the latter has a prayer for general relief.

2. Upon a joint promissory note, after the death of one of the makers, the remedy at law exists against the surviving maker alone, and is extinguished against the representatives of the deceased maker. If the payee or indorser has any remedy at all against such representative it must be in equity. *Osgood* v. *Spencer,* 2 H. & G. 133. At common law, it is the settled doctrine that in case of a joint obligation, if one of the obligors die, his representative is at law discharged, and the survivor alone can be sued. Daniel Neg. Instr. § 1298; 14 Enc. Pl. & Pr. 461 (notes 2 and 3); *Risley* v. *Brown,* 67 N. Y. 160; *United States* v. *Price,* 9 How. 83; 1 Chitty, Pl. 50; *Postan* v. *Stanway,* 5 East, 261; *Grant* v. *Shuster,* 1 Wend. 148. In this country it has been held that the creditor cannot come into equity against the assets of the deceased joint debtor without establishing the insolvency of the survivor. *Caldwell* v. *Stileman,* 1 Rawle, 212; *Alsop* v. *Mather,* 8 Conn. 584. There is no attempt to prove that Rodolphe Claughton is insolvent or that Mackey is insolvent, and no reason shown why the plaintiff should not have pursued her remedy against the surviving joint obligor. Mackey's answer in the equity suit sets up in distinct terms that he was simply able to pay the debt, and there is no reason shown why Mackey is insolvent, except that upon the 27th day of November, 1900, execution was issued against Mackey and Claughton, which the plaintiff, through her attorney, Leo Simmons, immediately ordered to be returned *nulla bona.* This is not proof of insolvency.

3. Before the surety upon Rodolphe Claughton's bond can be held liable there must first have been established a devastavit. Such devastavit is not established by judgment against the administrator and a return of *nulla bona,* and to render the surety liable there must be a second action, and judgment *de bonis propriis. Wilbur* v. *Hutto,* 25 S. C. 246. In *Com.* v. *Stub,* 11 Pa. 150, it was held that, the liability of a surety in an administrator's bond being contingent, suit cannot be brought against a surety by a party in interest, whether creditor, legatee, or dis-

tributee, without proceeding, in the first place, against the administrator or executor and fixing him personally for the debt, and that the settlement of a general account by an executor disclosing a general balance in his hands does not so fix the executor as to enable a distributee to maintain an action on the official bond. To same effect is *Com.* v. *Fretz,* 4 Pa. 344; *Paine* v. *Moffit,* 11 Pick. 496. The surety of an administrator cannot be made liable on his bond until the administrator has been cited. *Living* v. *Giles,* 3 Brev. 530. The executor or administrator must be convicted of a devastavit by a verdict * * * before an action can be sustained against the sureties. *Catlett* v. *Carter,* 2 Mumford (Va.) 24. The default of the executor must be established in a proper proceeding against him, before the sureties can be prosecuted upon their bond; and as the statute has prescribed the prior steps and the cases in which actions may be brought upon the bond, the right only arises upon compliance with the statutory regulations. *Hood* v. *Hood,* 85 N. Y. 561; *People* v. *Barnes,* 12 Wend. 492; *Stillwell* v. *Mills,* 19 Johns. 304; *People* v. *Rowland,* 5 Barb. 449; *Thayer* v. *Clark,* 48 Barb. 243; *Haight* v. *Brisin,* 100 N. Y. 219; *Chapron* v. *Chapron,* 41 La. Ann. 486; *Ramsey* v. *Cole,* 84 Ga. 147; *Lemon* v. *Thaxton,* 59 Ga. 706; *Irwin Co.* v. *Sloan,* 7 Ga. 31. A judgment against the *administrator de bonis non* of an estate, in a suit to surcharge the accounts of the administrator in chief, is not binding upon the sureties of the latter, where neither he nor his personal representative in case of his death, nor either of the sureties, was a party to the action. *Crouch* v. *Edwards,* 52 Ark. 499. Until there is judicial ascertainment of the default of the principal the liability of the surety is not fixed. Such judicial ascertainment must be something more than an auditing of accounts, or an ascertainment or judgment that a distributee's share is so much, or that the distributee is entitled to so much. There must be a decree ordering payment, and on which process to collect can issue against the principal. *Alexander* v. *Bryan,* 110 U. S. 414. The bond speaks for itself, and the law is that

it shall so speak, and that the liability of sureties is limited to the exact letter of the bond. Sureties stand upon the words of the bond, and if the words will not make them liable nothing can. There is no construction, no equity, against sureties. If the bond cannot have effect according to its exact words, the law does not authorize the court to give it effect in some other way in order that it may prevail. *Bishop* v. *Freeman,* 42 Mich. 533, and numerous cases in Stearns, Suretyship, page 18, note. In the case now before the court it would be unjust to hold the surety upon this administration bond responsible upon the case made out by this record. The decree appearing on page 36 of the record, so far as it relates to Rodolphe Claughton, is a decree for the payment of money *de bonis testatoris.* It is in no sense a personal decree against Rodolphe Claughton *de bonis propriis.* There has been no judicial finding that Rodolphe Claughton has violated his trust, and no just cause shown why the surety should pay this debt.

*Mr. Leo Simmons* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first thing in order is the appellee's motion to dismiss the appeal. The first ground of this motion is that it does not appear on the face of the application for the extension of time for filing the bill of exceptions, or in the order granting the same, that it was for good cause. This is not required, and the presumption must be that the discretion of the court was rightly exercised.

Nor is there any merit in the contention that the order must necessarily have been granted by the particular member of the supreme court of the District who presided at the trial, and by no other. The motion is overruled.

2. Some of the questions raised under the error assigned on

the action of the court in directing a verdict for the plaintiff are not really involved in the case as presented by the record. For this reason we are not called upon to determine whether an action at law could have been maintained against the representative of the deceased joint obligor, or whether a bill in equity would properly lie against him to subject the assets of the estate to the payment of the joint obligation, without first showing the insolvency of the surviving joint obligor. This action is based on the decree of November 14, 1900, in which the note became merged. The debt was established against the one obligor and the administrator of the other, and its payment decreed. Both were personally served with process in the District. Each answered separately, but neither raised a question as to the obligation of the note, or the right to maintain suit upon it in equity. The court having jurisdiction of the subject-matter of the suit, and of the parties, its decree is undoubtedly conclusive as to each of them, in respect of those questions. Whether it is equally conclusive as to an adjudicated fact that is not raised or supported by any allegation of the pleadings is a question that will be referred to hereafter.

3. A further contention on behalf of the appellant is that it is not bound by the decree against its principal, because it was not a party to the suit. In this we cannot concur. Whether a judgment or decree against an administrator is conclusive evidence of the debt in an action against the surety on his bond, we need not determine, although the preponderance of authority seems to affirm that it is. *Stovall* v. *Banks,* 10 Wall. 583, 588, 19 L. ed. 1036, 1038; 11 Am. & Eng. Enc. Law, 2d. ed. p. 901. See also *Washington Ice Co.* v. *Webster,* 125 U. S. 426, 446, 31 L. ed. 799, 807, 8 Sup. Ct. Rep. 947; *Moses* v. *United States,* 166 U. S. 571, 600, 41 L. ed. 1119, 1129, 17 Sup. Ct. Rep. 682.

It is certainly prima facie evidence, and that is all that is required for the purposes of this case; for if the surety could have attacked or impeached the decree upon any ground, no effort was made to that end.

4. A further attack is made upon that decree in so far as it undertakes to reform the joint note, and make it the joint and several note of the makers.

The note was described in the bill as binding the makers jointly, and there was no charge that it' had been so drawn through mistake or fraud, though there were certain allegations as to the actual receipt for joint benefit, by the obligors, of the money for the loan of which the note had been given, which might possibly have afforded ground for its correction in accordance with the doctrine enounced in *Pickersgill* v. *Lahens,* 15 Wall. 140, 144, 21 L. ed. 119, 120; see, also, *Hunt* v. *Rousmanier,* 8 Wheat. 174, 214, 5 L. ed. 589, 599.    There was, however, no prayer for such relief and it does not seem to have been in the contemplation of the pleader.

It may be conceded that so much of the decree as has no foundation in the pleadings is erroneous, but whether it is a nullity, as has been contended, is another question that we see no occasion to determine.    Assuming its nullity and treating it as if it had not been reformed at all, yet the general decree establishing the debt against the administrator of one of the joint makers of the note, which was one of the express objects of the bill, furnishes ample foundation for the action upon his bond.

Having proved this decree, and return of execution thereon unsatisfied, the plaintiff introduced the auditor's report that had been made and confirmed in the account taken in the probate court, from which it appeared that sufficient funds had come into the hands of the administrator to discharge the proportion of plaintiff's debt for which the verdict was returned. Proof was also made that the administrator had left the jurisdiction and taken up his residence in another State.

There was, therefore, not only ample foundation for the action, but also sufficient evidence of the breach of the condition of the bond, to justify the direction to the jury to return the verdict on which the judgment was entered.    Md. act 1798,

chap. 101, subchap. 8, §§ 7, 8, and 9 (D. C. Comp. Stat. chap. 1, §§ 93, 94, 95); Md. act 1720, chap. 24, § 2 (D. C. Comp. Stat. chap. 1, § 19); *Stovall* v. *Banks,* 10 Wall. 583, 588, 19 L. ed. 1036, 1038; *Moses* v. *United States,* 166 U. S. 571, 600, 41 L. ed. 1119, 1129, 17 Sup. Ct. Rep. 682.

The Maryland act of 1720, which has been held unrepealed by the act of 1798 (*United States* v. *Queen,* 3 Cranch. C. C. 420, Fed. Cas. No. 16,109; *United States* v. *King,* 1 MacArth. 499; *Dorsey* v. *State,* 4 Gill & J. 471), requires that, before action upon the bond, execution on the judgment against the administrator must have been returned *nulla bona,* or showing made of such insolvency, etc., as would render the creditor remediless. The requirement of execution and return was satisfied, notwithstanding the return was made the next day after issue, by order of the plaintiff's attorney. *Mehler* v. *Cornwell,* 3 App. D. C. 92, 99; *Clark* v. *Walter T. Bradley Coal, Lime, & Cement Co.* 6 App. D. C. 437, 448.

We find no error in the direction to the jury to return the verdict, and the judgment thereon will be affirmed with costs. It is so ordered.                           *Affirmed.*