**CLAPP v. HEINER, Internal Revenue Collector.**

**No. 4283.**

Circuit Court of Appeals, Third Circuit.

June 23, 1931.

Samuel Kaufman, S. Leo Ruslander, and Geo. K. Warn, all of Pittsburgh, Pa., for appellant.

Louis E. Graham, U. S. Atty., and John A. McCann, Sp. Asst. U. S. Atty., both of Pittsburgh, Pa. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Thomas H. Lewis, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before DAVIS, Circuit Judge, and CLARK and AVIS, District Judges.

CLARK, District Judge.

The plaintiff is aggrieved at the failure of the Commissioner of Internal Revenue to refund the taxes assessed on payments by the Union Trust Company to beneficiaries under three trust agreements dated March 12, 1917. By those deeds of trust, Mr. Clapp, as settlor, conveyed shares of stock in the Aluminum Company of America to the aforesaid trust company in trust to pay the dividends therefrom to his wife and two daughters. The trust for the wife was for life, and for the daughters for life, and to their children and grandchildren within the limits prescribed by the rule against perpetuities.

The contest between the citizen and his government over taxes will beyond question last as long as that other great struggle with which it is often coupled. To describe its various phases as evasion rather than as avoidance seems to us to use the language of the ultimately victorious contestant rather than to speak as an impartial observer. The artifice or cunning implicit in the first term is not consistent with the approval given by the courts to a disposition of property in the manner best suited to avoid taxation. Mr. Justice Holmes, speaking for the Supreme Court in the case of Bullen v. Wisconsin, 240 U. S. 625, at pages 630, 631, 36 S. Ct. 473, 474, 60 L. Ed. 830, said:

"We do not speak of evasion, because, when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits. When an act is condemned as an evasion, what is meant is that it is on the wrong side of the line indicated by the policy if not by the mere letter of the law."

Within the past week we are in receipt of two circulars advertising two books whose titles speak for themselves—Robinson, Saving Taxes in Drafting Wills and Trusts, and Lee's, Minimizing Taxes. By the same token, the state cannot be criticised for continuing the battle by legislation designed as an effective counter attack. The principal case presents one such skirmish.

Even since the Statute of Uses, the trust has served as a means of escape from the embarrassments of ownership. Its employment to avoid this particularly onerous incidence was inevitable. So the estate was divided among the family and the surtax became the inverse reward of fertility. Taxation being by definition dependent upon beneficial receipt, the government had no answer for this procedure unless it was willing to declare such transactions presumptively fraudulent. Harvard Law Review, vol. 43, p. 1286.

The "cake and eat it too" cast of the legal mind soon, however, furnished the weapon appropriate to barrage these trenches, behind which the cestuis were dug in. So the stratagem of the revocable trust was met by a provision of the Revenue Act which dealt expressly with these attempts to keep the actual control of untaxable property. In Holmes Federal Taxes (6th Ed.) pages 3 and 4, we find this legislation described as follows:

"It has been realized that many provisions of the 1921 law open the door too wide to tax avoidance and many provisions of the new statute reflect a desire on the part of congress to remedy this sort of defect in the 1921 law. Chief among this class of changes are those relating to the organization and reorganization of corporations, the basis for depreciation and depletion upon the transfer of property to a corporation and the various provisions relating to transfers in trust. * * *

"Other provisions reflecting a desire to close avenues of tax avoidance are the provision taxing the income of revocable trusts in the hands of the grantor and treating in a similar manner trusts the income of which may in the discretion of the grantor be either distributed or accumulated, or the income of which is to be applied to the payment of insurance premiums on policies covering the life of the grantor."

It first appears as section 219 (g) of the Revenue Act for 1924 (26 USCA § 960 note), and is found in identical language in every Revenue Act passed since then. Revenue Act 1928, § 166 (26 USCA § 2166):

"Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in

himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor."

No sooner was the Government's position consolidated by this provision, than the legal shock troops of the embattled taxpayer began a fresh assault. The opening guns were of course directed at its constitutionality. This argument met with no favor in the courts, and we find the Supreme Court in the case of Corliss v. Bowers, Collector, expressly sustaining the statute in an opinion handed down one week prior to the argument of the case at bar. Corliss v. Bowers, Collector, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916.

Forced to abandon this position, counsel are attempting to infiltrate the enemy's position through the medium of the clause of the trust agreement, which requires six months' notice of revocation. His argument in this respect is based, first, on a curious interpretation of a phrase in the statute, and, secondly, on some general theory of injustice.

■ He contends that the notice of revocation requirement is inconsistent with the words "at any time," which appear in the larger expression of the statute, as follows: "Where the grantor of a trust has at any time during the taxable year * * * the power to revest in himself title to any part of the corpus of the trust." In other words, he says that the indefinite adjective pronoun "any" is synonymous with its fellow indefinite adjective pronoun "all." Like many other statements, this proposition is a half truth. "Any," which derives from the Anglo-Saxon "Aenig," meaning "one," may unquestionably be used in a context where "all" could be substituted without changing the sense. Without attempting an exclusive classification of such use, we suggest cases wherein it modifies, either as adverb, adverbial phrase, or as cognate object, a subject; as, for instance, "Any contract under seal is valid." "I will plead at any time." "I will try any case." Where, however, "any" is used in a context where the substitution of "all" requires a different and broader meaning, it seems to us clear that "any" must be interpreted in its narrower sense; the user of; the language being assumed to have before him both meanings, and to have, therefore, deliberately made his selection. So, in the principal case, the context refers to the conditional happening of an event which may occur one or more times. The choice, then, of "any" and the rejection of the alternative, "all," indicate its interpretation as "one" or "once."

■ The appeal to conscience made by the taxpayer might be answered generally by saying that in taxation that guide has little if any place. Dane v. Jackson, 256 U. S. page 589, 41 S. Ct. 566, 65 L. Ed. 1107; Ft. Smith Lumber Co. v. Arkansas, 251 U. S. page 532, 40 S. Ct. 304, 64 L. Ed. 396; Forsyth v. Hammond, 166 U. S. page 506, 17 S. Ct. 665, 41 L. Ed. 1095. Apart from that, however, the argument evinces a misconception of the legal theory on which the taxation of revocable trusts has been sustained. That theory does not concern itself with any actual receipt of income, but rather, as Mr. Justice Holmes says (Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 337, 74 L. Ed. 916), with what is "subject to a man's unfettered command." The hard and imaginary cases suggested in appellant's brief, having as they do with enjoyment of income rather than with power over it, are therefore beside the point.

The judgment is affirmed.