The bill in this case was filed to compel the specific performance of a contract dated October 9th, 1944, whereby complainants agreed to convey to the defendant lands and premises in the Township of Denville, Morris County.
The defendant refused to accept the deed proffered by complainants, which had been executed by them, on the ground that it did not convey a marketable title. Defendant claims that Mrs. Meade, one of the complainants, obtained a divorce in Nevada against her former husband, Bernard Dressler, and that the decree of divorce was obtained by fraud for the reason that she was not a bona fide resident of or domiciled in Nevada at the time the decree was rendered or at any other time. Defendant, therefore, claims that the former husband of Mrs. Meade has a right of curtesy in the real estate in question and that the deed, to sufficiently convey the property, should be executed by him.
Defendant's solicitor introduced in evidence an exemplified copy of the proceedings and answers to certain interrogatories in the Nevada court. Solicitor of the defendant rested his case on the above documentary evidence and the admissions in the pleadings in this case. No other evidence or testimony was produced at the hearing to support defendant's allegation of fraud.
The evidence of the defendant disclosed the following facts: *Page 493 
Mrs. Meade was married to her former husband, Bernard Dressler, in Vienna, Austria, on November 20th, 1932. Sometime thereafter they came to this country and resided in New York City. On August 29th, 1941, they entered into an agreement which recites, among other things:
"* * * nor will either party hereto at any time hereafter claim or demand any of the other's property, except as herein provided, which the other has in his or her power, custody or possession, or which he or she shall or may, at any time hereinafter have, buy or procure, or which shall be devised or given to either of the parties hereto, or which he or she may acquire, and that each shall and may enjoy and absolutely dispose of the same as if each were single and unmarried."
Complainants acquired title to the premises in question presumably as tenants in common on September 12th, 1941.
The complainant Mrs. Meade, who was then Mrs. Dressler, went to Reno, Nevada, on October 16th, 1941. On November 28th, 1941, the Second Judicial District Court of the State of Nevada in and for the County of Washoe, granted her a decree of absolute divorce on the ground of extreme cruelty.
Her husband, Bernard Dressler, did not personally appear in the divorce proceedings. He did, however, on October 24th, 1941, execute a power of attorney wherein he authorized Thomas H. Grimm, a member of the Nevada bar, to represent him in any suit for divorce that might be brought against him by his wife, including "the authority to accept service of complaint and summons and other process in my behalf, to demur, answer or otherwise plead to the complaint, c."
Pursuant to the above authority, an answer was filed in the Nevada suit wherein all of the allegations of the complaint, except one, were admitted by the defendant. He denied the allegation of extreme cruelty. At the hearing, the defendant was represented by the counsel he theretofore authorized. In its "Findings of Fact and Conclusions of Law" the Nevada court found that the plaintiff "is a bona fide resident of and domiciled in the County of Washoe, State of Nevada." This was admitted by the defendant in his answer. The court further found "since said marriage defendant has treated plaintiff with extreme cruelty." *Page 494 
On December 12th, 1941, the said complainant returned to New York City. She married Stephen J. Meade in the Municipal Building in New York City on December 19th, 1941. The complainants came to New Jersey in April, 1942, and occupied the premises in question which they had acquired on September 12th, 1941. Their residence in this state has been continuous since that time.
This is not a proceeding between the parties to the Nevada decree to set it aside on the ground of fraud in the jurisdiction. If such were the case, this court would not disturb the decree of the sister state since neither party was a resident of New Jersey before or at the time of the Nevada decree. SeeGreensaft v. Greensaft, 120 N.J. Eq. 208. This is a case in which a stranger to the Nevada decree of divorce denies its validity asserting that the decree is not entitled to recognition in this state. That a party may do this appears to have been recognized by the United States Supreme Court. See Williams v.State of North Carolina, 325 U.S. 226; 89 L.Ed. 1577;65 S.Ct. 1092; 157 A.L.R. 1366; rehearing denied, 325 U.S. 895;89 L.Ed. 2006; 65 S.Ct. 1560, wherein Mr. Justice Frankfurter said:
"It is one thing to reopen an issue that has been settled after appropriate opportunity to present their contentions has been afforded to all who had an interest in its adjudication. This applies also to jurisdictional questions. After a contest these cannot be relitigated as between the parties. Forsyth v.Hammond, 166 U.S. 506, 517; 41 L.Ed. 1095, 1099; 17 S.Ct. 665;Chicago L. Ins. Co. v. Cherry, 244 U.S. 25, 30; 61 L.Ed. 966,969; 37 S.Ct. 492; Davis v. Davis, supra. But those not parties to a litigation ought not to be foreclosed by the interested actions of others; c."
Assuming that the above observation of the United States Supreme Court applies to the defendant in this case, still the defendant is not relieved from the well settled rule of this court that fraud in the jurisdiction, like the claim of any fraud, is never presumed but is a fact that must always be clearly and convincingly proved. See Pahy v. Pahy, 107 N.J. Eq. 538,540. *Page 495 
It appears from an examination of the proceedings in the Nevada court, that said court had jurisdiction of the parties as well as the subject-matter. The defendant there answered the complaint and appeared by counsel. The decree was granted in favor of the plaintiff. The answers to the interrogatories contained merely a recital of dates. These facts are not sufficient to spell out the defendant's claim of fraud on the court of a sister state or an absence of domicile in Nevada by the complainant Mrs. Meade at the time the decree was granted by the Nevada court.
The acquisition of a new domicile is a question of intent. SeeSprague v. Sprague, 131 N.J. Eq. 104, 107. No evidence was produced at the hearing, except the documents above referred to, to show that Mrs. Meade at the time the Nevada decree was granted was not domiciled in Nevada. The defendant's proofs raise a suspicion that the purpose of the wife in going to Nevada was to obtain a divorce and that she did not intend to become a permanent resident there. Mere suspicion, however, is not sufficient to justify this court in declaring that the Nevada decree is invalid in this state. See Pahy v. Pahy, supra.
Vice-Chancellor VanFleet in Supreme Council of the RoyalArcanum v. Carley, 52 N.J. Eq. 642, 646, said:
"But in any case where the court is asked to deny to the judicial proceedings of a sister state, on the ground of fraud, the faith and credit which the constitution and the federal statute command shall be given to them, the truth of the charge, to make the charge successful, must be established by the most satisfactory and convincing evidence, for the court is bound by its fealty to the constitution and interstate law, as well as by a proper respect for the tribunal whose action is assailed, to make every presumption in favor of the validity and justice of the proceedings. Until fraud is clearly proved the court must accept them as both honest and just. Mackay v. Gordon, 5 Vr.286, 290."
Assuming for the sake of argument, that the unsuccessful defendant in the Nevada proceedings should, at some future date, attempt to set aside that decree in the courts of this state on the allegation that the courts of this state would assume *Page 496 
jurisdiction because of his interest in land here at the time of the Nevada decree, he would not be able to obtain relief from our courts. See Sleeper v. Sleeper, 129 N.J. Eq. 94, 98, wherein Mr. Justice Case said:
"New rights had arisen on the assumption of a legal status which Mrs. Sleeper, over a long period, allowed to stand unchallenged notwithstanding full opportunity to challenge. Whether or not the facts incident to, and the circumstances under which she entered into and vigorously conducted her defense in, the Nevada suit would, by themselves, bar the relief now sought is not determined; but those facts and circumstances, followed by her long inaction and the intervention of the new marriage contracted in good faith after a suitable waiting period, do, in our opinion, serve to place her in laches and to bar her from the relief prayed in her bill."
I have, therefore, concluded that complainants have tendered to the defendant a marketable title which will not be exposed to the hazards of litigation claimed by the defendant. An absolute divorce terminates a husband's right of curtesy as effectively as if he were dead. 17 C.J., Curtesy, § 53; Hollander v. Abrams,99 N.J. Eq. 254, 269 and 270; affirmed, 100 N.J. Eq. 298.
Defendant's counter-claim for the return of her deposit, attorney's fees and disbursements will be dismissed.
I will advise a decree accordingly. *Page 497