Julia E. DUKE, Appellant,

v.

Gene DURFEE and Laura Durfee,
Appellees.

Gene DURFEE and Laura Durfee,
Appellants,

v.

Julia E. DUKE, Appellee.

Nos. 16763, 16764.

United States Court of Appeals
Eighth Circuit.

Sept. 18, 1962.

Rehearing Denied Oct. 11, 1962.

Robert A. Brown, of Brown, Douglas & Brown, St. Joseph, Mo., for Julia E. Duke; John H. Wiltse, of Wiltse & Wiltse, Falls City, Neb., with him on the brief.

August Ross, of Ross & O'Connor, Omaha, Neb., for Gene Durfee and another; Theodore M. Kranitz, of Kranitz & Kranitz, St. Joseph, Mo., and Alfred A. Fiedler, Omaha, Neb., with him on the brief.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

BLACKMUN, Circuit Judge.

This action is another chapter in a controversy over several hundred acres of land, once an island, in the Missouri River bottoms a short distance east and south of Rulo, Nebraska, and west and south of Fortesque, Missouri. It comes to us by way of appeals from a judgment dismissing the plaintiff's petition and the defendants' cross-complaint.

The basic factual situation is not untypical of these riverland title controversies yet the case admittedly presents not only simple and rather classical facts but issues which appear to possess some first impression aspects in the areas of conflict of laws and res judicata.

The middle of the main channel of the Missouri River forms the boundary between Nebraska and Missouri. Nebraska Enabling Act of April 19, 1864, 13 Stat. 47, § 2. Missouri Enabling Act of March 6, 1820, 3 Stat. 545, § 2, and the Missouri Constitution of 1820, Article I, as amended in 1834 by the Missouri Eighth General Assembly, and as affected by the Congressional Act of June 7, 1836, known as "The Platte Purchase", 5 Stat. 34, and the activating Presidential Proclamation of March 28, 1837. See St. Joseph & G. I. R. R. v. Devereux, C.C., D.Kansas, 1889, 41 F. 14, 15, and Cooley v. Golden, 1893, 52 Mo.App. 229, 232–233.

Near the land in question the river flows generally from west to east. At the present time the land lies on the north and east side of the river. However, prior to 1855, as disclosed by a survey of that year, the river's main channel was to the north and east of the land so that, if the channel still lay in that direction by 1867 when Nebraska was admitted to the Union, it was then clearly within the State of Nebraska. Patents covering the land were issued by the General Land Office of the United States in 1860 and filed some years later with the Register of Deeds of Richardson County, Nebraska.

The plaintiff, Julia E. Duke, a citizen of Missouri, claims title to the land through a Holt County, Missouri, swamp land patent issued to her in 1946 pursuant to V.A.M.S. § 241.220. The defendants, Gene Durfee and Laura, his wife, citizens of Nebraska, claim title to the land under a Richardson County, Nebraska, sheriff's tax foreclosure sale deed issued to them in 1956 pursuant to R.R. S.Nebraska 1943, § 77–1913. Julia asserts that the land is Missouri land and is thus hers by the Missouri patent. The Durfees assert that the land is Nebraska land and is thus theirs by the Nebraska sheriff's deed.

In 1956 the Durfees instituted an action to quiet title. This suit was brought in the District Court of Richardson County, Nebraska. Julia and her tenants were named as defendants. They appeared in the litigation. They filed an answer which, in addition to a general denial, contained an admission of possession, a claim of ownership, and an allegation that the land was in Missouri and not within the jurisdiction of the Nebraska court. Julia also testified in that proceeding. The Nebraska court

found that it had jurisdiction of both the parties and the subject matter and that the land was in Nebraska, and quieted title in the Durfees as its owners. Julia and her tenants appealed to the Supreme Court of Nebraska. Inasmuch as the matter sounded in equity, that court tried the case de novo. R.R.S. Nebraska 1943, § 25–1925: Dartmouth College v. Rose, 1961, 172 Neb. 764, 112 N.W.2d 256, 265; Heider v. Kautz, 1957, 165 Neb. 649, 87 N.W.2d 226, 228. It affirmed the judgment for the Durfees. Durfee v. Keiffer, 1959, 168 Neb. 272, 95 N.W.2d 618. There was no attempt to bring the case to the Supreme Court of the United States.

In 1959 Julia instituted the present title action in the Circuit Court of Holt County, Missouri. Service on the Durfees was effected by mail pursuant to V.A.M.S. § 506.160. The Durfees removed the suit to federal court. Their answer contained a general denial and asserted, as an affirmative defense, that the Nebraska proceedings were res judicata. The Durfees also filed a cross complaint alleging trespass and the harvesting of crops upon the land and seeking damages and an injunction. A petition of the State of Missouri to appear as amicus curiae was granted.

At the trial to the court the Nebraska record was introduced along with other evidence. The court wrote a memorandum in which it reviewed the applicable real property law. It concluded, contrary to the Nebraska result, that the land was in Missouri. It did so on the theory that the main channel of the river had worked its way by accretion to the south and west; that it was off to the south and west prior to the formation of the island and land in question; and that, by the time Julia acquired her Missouri patent, the land was in that state. Despite this conclusion the district court "with much reluctance" dismissed Julia's complaint on the ground that the matter was res judicata because of the earlier resolution of the identical question by the Nebraska courts. It also dismissed the cross complaint because it felt that it must fall with the main action.

The Durfee position here is that the issue before us is simply res judicata. The Durfees claim that the Nebraska litigation in which Julia actively participated involved the same parties, the same subject matter, essentially the same evidence, and the same question for determination; that the jurisdiction issue was concededly litigated there and was decided adversely to Julia; and that the principle of res judicata applies to a jurisdictional determination as well as to a non-jurisdictional one. They also point out that everyone agrees that the land was originally in Nebraska and they urge that Julia has not sustained the burden, which is hers, of showing the shifting of the Missouri River center channel, and hence the state line, to the south and west by accretion. They claim finally that their cross complaint stands on its own feet and does not fall with the main action. There is a suggestion that the Nebraska judgment is entitled to the protection and benefit of the full faith and credit clause of Article IV, § 1, of the Constitution.

Julia takes the position that the Nebraska court did not have jurisdiction of the land as subject-matter; that, even though she appeared in the Nebraska proceedings and raised and litigated the question of jurisdiction, she is not bound by the decision of the courts of that state; that, inasmuch as it is subject-matter jurisdiction, and not jurisdiction of the person, which is here involved, the Nebraska judgment is open to collateral inquiry; that in the federal trial new additional evidence was presented; and that the federal district court, having found that the land was Missouri land, must quiet its title in Julia.

It is to be noted at the outset that this case at least appears to present a conflict between two established legal principles. The first is that

"Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the con-

test; and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause." Baldwin v. Iowa State Traveling Men's Association, 1931, 283 U.S. 522, 525–526, 51 S.Ct. 517, 75 L.Ed. 1244.

The second is that

" * * * every State possesses exclusive jurisdiction and sovereignty over * * * property within its territory. * * * no State can exercise direct jurisdiction and authority over * * * property without its territory. * * * 'Any exertion of authority of this sort beyond this limit,' says Story, 'is a mere nullity, and incapable of binding such * * * property in any other tribunals.' Story, Confl. Laws, sect. 539." Pennoyer v. Neff, 1877, 95 U.S. 714, 722–723, 24 L.Ed. 565.

and that jurisdiction over real estate outside a state's boundary cannot be conferred upon a court of the state by consent of the parties.

■ ■ We first dispose of the full faith and credit suggestion. Under this constitutional clause and the implementing statute, 28 U.S.C. § 1738, each state must accord to a judgment rendered in a sister state the conclusiveness that judgment enjoys in the state of rendition. This has been described by the Supreme Court as a rule of evidence, Wisconsin v. Pelican Ins. Co., 1888, 127 U.S. 265, 291–292, 8 S.Ct. 1370, 32 L.Ed. 239, and as one making " * * * the local doctrines of *res judicata*, speaking generally, become a part of national jurisprudence * * * ". Riley v. New York Trust Co., 1942, 315 U.S. 343, 349, 62 S.Ct. 608, 86 L.Ed. 885. It is clearly established, however, that the full faith and credit clause, while foreclosing repe-

titious litigation of non-jurisdictional matters, does not preclude a second forum's inquiry into questions of the first court's personal or subject-matter jurisdiction. This was the holding of several early Supreme Court cases. The principle was comprehensively restated in the usually cited case of Thompson v. Whitman, 1874, 85 U.S. (18 Wall.) 457, 469, 21 L.Ed. 897, and has been perpetuated by later cases including Grover & Baker Sewing Machine Co. v. Radcliffe, 1890, 137 U.S. 287, 11 S.Ct. 92, 34 L.Ed. 670; Adam v. Saenger, 1938, 303 U.S. 59, 58 S.Ct. 454, 82 L.Ed. 649; Milliken v. Meyer, 1940, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278; and Western Union Telegraph Co. v. Pennsylvania, 1961, 368 U.S. 71, 75, 82 S.Ct. 199, 7 L. Ed.2d 139. Thus, there is no full faith and credit requirement that, in the case before us, a Missouri court—and thereby the federal district court in Missouri, see Angel v. Bullington, 1947, 330 U.S. 183, 186–187, 67 S.Ct. 657, 91 L.Ed. 832— must accept the Nebraska judgment as final. The district court here did not violate this principle for it based its decision, not on full faith and credit, but upon res judicata.

■ The question of the conclusiveness of a jurisdictional determination under the res judicata principle is much more complex than the corresponding problem raised by the full faith and credit issue. To begin with, matters of personal jurisdiction and those of subject-matter jurisdiction have not received identical treatment. Thus, as to the former, where a defendant appears in the first action and litigates the question of the court's jurisdiction over his person, the ensuing judgment is held to be res judicata and not subject to collateral attack in another forum. Chicago Life Ins. Co. v. Cherry, 1917, 244 U.S. 25, 37 S.Ct. 492, 61 L.Ed. 966; Baldwin v. Iowa State Traveling Men's Association, supra, pp. 524–525 of 283 U.S., 51 S.Ct. 517 (special appearance); American Surety Co. v. Baldwin, 1932, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231 (general appearance); Restatement of the Law

of Judgments, § 9; Restatement of the Law of Conflict of Laws (1948 Supp.) § 451(1).[1]

On the other hand, the answer, under the decided cases, to the parallel problem of conclusiveness of a prior determination of subject-matter jurisdiction, as distinguished from jurisdiction over the person, is not nearly so clear. The Supreme Court at different times has stated that the res judicata principle is both (a) applicable to determinations of subject-matter jurisdiction and (b) does not preclude a collateral inquiry into a court's assumption of subject-matter jurisdiction. The Court's holdings disclose the same apparent inconsistency and are further clouded by generalizations going both ways. As a result the formulation of a governing rule is difficult. In order to ascertain the present status of the law we indulge in a chronological review of the Supreme Court cases:

(a) The earliest opinions of the Court —concerned primarily with the disposition of real property—held or stated that the element of subject-matter jurisdiction, essential to a court's competency or power, could be inquired into collaterally. Elliott v. Peirsol's Lessees, 1828, 26 U.S. (1 Pet.) 328, 340–341, 7 L.Ed. 164; Wilcox v. Jackson, 1839, 38 U.S. (13 Pet.) 498, 511, 10 L.Ed. 264; Hickey's Lessee v. Stewart, 1845, 44 U.S. (3 How.) 750, 762–763, 11 L.Ed. 814; Williamson v. Berry, 1850, 49 U.S. (8 How.) 495, 540–543, 12 L.Ed. 1170; Boswell's Lessee v. Otis, 1850, 50 U.S. (9 How.) 336, 13 L.Ed. 164. The inquiry was clearly limited to the jurisdictional question. Thompson v. Tolmie, 1829, 27 U.S. (2 Pet.) 157, 169, 7 L.Ed. 381; Voorhees v. Jackson, 1836, 35 U.S. (10 Pet.) 449, 478, 9 L.Ed. 90. This approach, by way of exception to the res judicata concept, continued apparently unquestioned until almost the end of the nineteenth century.

Thus, by way of dictum, the Court said in Noble v. Union River Logging R. R., 1893, 147 U.S. 165, 173, 13 S.Ct. 271, 37 L.Ed. 123:

"It is true that, in every proceeding of a judicial nature, there are one or more facts which are strictly jurisdictional, the existence of which is necessary to the validity of the proceedings, and without which the act of the court is a mere nullity; such, for example, as * * * the seizure and possession of the *res* within the bailiwick in a proceeding *in rem* * * *. In these and similar cases the action of the court * * * fails for want of jurisdiction over the person or subject-matter. The proceeding is a nullity, and its invalidity may be shown in a collateral proceeding."

(b) Then the case of Forsyth v. Hammond, 1897, 166 U.S. 506, 17 S.Ct. 665, 41 L.Ed. 1095, was decided. There, although the facts were not multi-state, the Court refers to the res judicata principle in the broadest terms. The city sought to annex the plaintiff's property which adjoined the city but was outside its limits. The plaintiff unsuccessfully appealed the trial court's approval of the annexation to the state supreme court. She then instituted a federal court injunction action. The Supreme Court held that the matter was res judicata and said, pp. 517–518 of 166 U.S., p. 670 of 17 S.Ct.:

"But after an adverse decree she insisted that it was not only erroneous but void, and voluntarily commenced an action in the Supreme Court of the State to have that claim established. She invoked the jurisdiction of that court. She * * * there challenged the decree of the Circuit Court, challenged it for error and also for lack of jurisdiction.

1. The result is otherwise where the judgment in the first action is obtained by default and without litigation of the issue of personal jurisdiction. Then collateral inquiry may be made as to the first court's jurisdiction of the person of the defendant. Baldwin v. Iowa State Traveling Men's Association, supra, p. 525 of 283 U.S., 51 S.Ct. 517.

The questions both of error and of jurisdiction were certainly judicial in their nature and questions within the undoubted cognizance of the Supreme Court. She voluntarily sought its judgment. Can she, after its decision, be heard in any other tribunal to collaterally deny the validity thereof? Does not the principle of *res judicata* apply in all its force? Having litigated a question in one competent tribunal and been defeated, can she litigate the same question in another tribunal, acting independently, and having no appellate jurisdiction? * * * [A] decision by a court of competent jurisdiction in respect to any essential fact or question in the one action is conclusive between the parties in all subsequent actions."

The Court went on to emphasize what it called "another aspect of this case", namely, that the controversy was one peculiarly within the domain of state control, that federal court jurisdiction rested only on adverse citizenship and not on any federal constitutional right and that there was nothing in the Constitution to prevent the people of a state from giving to the courts and taking away from the legislature matters concerning the territorial boundaries of a municipal corporation.

(c) Next were two cases in which collateral inquiry was permitted. In one the attack was successful; in the other it was not.

The first was Vallely v. Northern Fire & Marine Ins. Co., 1920, 254 U.S. 348, 41 S.Ct. 116, 65 L.Ed. 297. There a bankruptcy court had entertained an involuntary petition against the insurance company despite the fact that the Bankruptcy Act expressly excepted insurance corporations. After the time to appeal had expired the company moved to vacate the adjudication for lack of jurisdiction. The motion was sustained by the trial court. The Supreme Court, on certifi-

cate, approved, saying, pp. 355–356, p. 118 of 41 S.Ct.:

"The effect of these provisions is that there is no statute of bankruptcy as to the excepted corporations, and necessarily there is no power in the District Court to include them. In other words, the policy of the law is to leave the relation and remedies of 'municipal, railroad, insurance, or banking' corporations to their creditors, and their creditors to them, to other provisions of law. It is easy to see in what disorder a different policy would result."

Policy was thus emphasized.[2]

The second case was Grubb v. Public Utilities Comm'n, 1930, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972. Here the State Commission had denied an applicant an operating certificate for his buses and on his appeal, with others, the highest state court had affirmed. The applicant then pursued an injunction suit he had instituted in federal court. The Commission pleaded the state judgment as a bar. Although the appeal was decided against the applicant, the Supreme Court clearly held that the question of the Commission's subject-matter jurisdiction could be raised in the collateral proceeding, saying, p. 475, p. 377 of 50 S.Ct.:

"That the state court had jurisdiction of the parties is plain and not questioned. But the appellant does question that it had jurisdiction of the subject matter—and this although at the outset he treated that jurisdiction as subsisting and invoked its exercise. Of course, he is entitled to raise this question notwithstanding his prior inconsistent attitude, for jurisdiction of the subject matter must arise by law and not by mere consent."

The difficulty of synthesizing a rule from the decided cases at that time in the law's development was intimated by the Supreme Court itself in Vallely when it said, by way of comment upon the op-

2. See also Kalb v. Feuerstein, 1940, 308 U.S. 433, 438, 440, 60 S.Ct. 343, 84 L.Ed. 370.

posing arguments (i) that any litigated issue should be open only to direct attack and (ii) that courts may not act beyond the power and authority conferred upon them, p. 354 of 254 U.S., p. 117 of 41 S.Ct.:

"Which of the propositions shall prevail in a given case cannot be dogmatically asserted, and cases of their consideration and application can be cited against each other."

Thus, although by that time it was clear that prior determinations of subject-matter jurisdiction were sometimes open to collateral inquiry, it remained unclear as to when such an inquiry would be entertained or as to what considerations would control that decision. This uncertainty was noted in the 1934 original edition of the Restatement of the Law of Conflict of Laws. After stating the rule, in § 451, that a party appearing in a proceeding will be precluded from questioning the jurisdiction of the court over his person in any subsequent proceedings in that or any other state if the court in which he appeared purported to render a judgment against him, the American Law Institute by appended caveat [3] expressly withheld comment as to subject-matter jurisdiction. Subsequent Supreme Court cases, however, decided within the following seven years, provided additional guide lines.

(d) Next was the divorce case of Davis v. Davis, 1938, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26. The husband sought a divorce in Virginia. His wife appeared there specially to contest Virginia's jurisdiction on the ground that their marriage domicile was in the District of Columbia. The Virginia court held that it had jurisdiction of the subject-matter because, under Virginia law, the husband had established his residence in Virginia for the required length of time. The divorce was granted. The husband then sought enforcement of this decree in the District. The wife defended on the ground that the Virginia court lacked jurisdiction. The Supreme Court held that her voluntary appearance and litigation in Virginia precluded the collateral attack. The Court, in support of its conclusion, cited only Baldwin v. Iowa State Traveling Men's Association, supra, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244, which had to do with jurisdiction of the person. The Davis result is consistently adhered to by the Supreme Court in divorce cases and the challenges therein to subject-matter jurisdiction. See, for example, Cook v. Cook, 1951, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146, and cases cited.

(e) Then followed, within eighteen months, three non-divorce cases and a supporting dictum in a fourth case to the effect that res judicata was applicable, under the facts of those cases, to the issue of subject-matter jurisdiction. The first was Stoll v. Gottlieb, 1938, 305 U.S. 165, 59 S.Ct. 134, 83 L. Ed. 104, decided two weeks after Davis. There, in a bankruptcy situation, the Court said, pp. 171–173, p. 137 of 59 S.Ct.:

"Where adversary parties appear, a court must have the power to determine whether or not it has jurisdiction of the person of a litigant, or whether its geographical jurisdiction covers the place of the occurrence under consideration. Every court in rendering a judgment, tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter. * * *

"* * * After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second

---

**3.** "The Institute expresses no opinion whether and how far a party appearing and participating in the proceedings in a court of any state is precluded from subsequently questioning the jurisdiction of the court over the subject matter of the action in the courts of that state or any other state if the court in which he appeared purported to render a judgment against him."

decision will be more satisfactory than the first.

"That a former judgment in a state court is conclusive between the parties and their privies in a federal court when entered upon an actually contested issue as to the jurisdiction of the court over the subject matter of the litigation, has been determined by this Court in *Forsyth v. Hammond.*" (footnotes omitted).

It sought to distinguish, pp. 175–176, 59 S.Ct. 134, but did not overrule its earlier and seemingly contrary result in Vallely, also a bankruptcy case, not on the basis of the actual holding in Vallely—that the lack of jurisdiction of the subject-matter was clear and indisputable and that failure to recognize this would be violative of a paramount congressional policy— but on a ground not relied upon in Vallely itself, namely, that the jurisdictional question actually had not been litigated there and judgment was obtained by default.

The second was Treinies v. Sunshine Mining Co., 1939, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85. There an Idaho court had determined that an award of corporate shares by a Washington court, sitting in probate but resting its decision upon an alleged post-distribution settlement between beneficiaries, was void for lack of subject-matter jurisdiction. In the corporation's subsequent interpleader action in a federal forum the Supreme Court said, p. 78, p. 50 of 60 S.Ct., perhaps with some inconsistency of statement:

"The power of the Idaho court to examine into the jurisdiction of the Washington court is beyond question. Even where the decision against the validity of the original judgment is erroneous, it is a valid exercise of judicial power by the second court.

"One trial of an issue is enough. 'The principles of *res judicata* apply to questions of jurisdiction as well as to other issues,' as well to jurisdiction of the subject matter as of the parties." (footnotes omitted).

The third was Chicot County Drainage Dist. v. Baxter State Bank, 1940, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329. Here the Court held that the opportunity in the prior proceeding to raise the question of jurisdiction, although unavailed of, was sufficient to invoke the defense of res judicata. It said, p. 377, p. 320 of 60 S.Ct., that a court "has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is *res judicata* in a collateral action."

The dictum to the same general effect is in Sunshine Anthracite Coal Co. v. Adkins, 1940, 310 U.S. 381, 403, 60 S.Ct. 907, 84 L.Ed. 1263.

These cases thus seem to emphasize the actual litigation, or the opportunity for litigation, of the question of subject-matter jurisdiction in the first forum. None of them involved real estate.

(f) Also in 1940, however, came the case of United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894. Here the policy factor, originally given weight in Vallely, again appears. The government, on behalf of Indian Nations, had filed a claim in a receivership in Missouri. The Court there had entertained the debtor's cross-claim and, in the ensuing reorganization proceedings, rendered judgment on it despite the fact the government was immune from suit without its consent. No review of this judgment was sought. The government then asserted its claim in another federal court against the debtor's surety. The Supreme Court, by Mr. Justice Reed who had also written the opinions in Gottlieb and Treinies, this time refused to regard the judgment in the reorganization proceedings as a bar and said, pp. 512–514, p. 656 of 60 S.Ct.:

"No statutory authority granted jurisdiction to the Missouri Court to adjudicate a cross-claim against the United States. The public policy which exempted the dependent as

well as the dominant sovereignties from suit without consent continues this immunity even after dissolution of the tribal government. These Indian Nations are exempt from suit without Congressional authorization. * * * The desirability for complete settlement of all issues between parties must, we think, yield to the principle of immunity. * * *

[T]his immunity cannot be waived by officials. * * *

"The reasons for the conclusion that this immunity may not be waived govern likewise the question of res judicata. As no appeal was taken from this Missouri judgment, it is subject to collateral attack only if void. * * * Consent alone gives jurisdiction to adjudge against a sovereign. * * * Public policy forbids the suit unless consent is given, as clearly as public policy makes jurisdiction exclusive by declaration of the legislative body." (footnotes omitted).

It is thus apparent that there are situations where the policy underlying nonrecognition of jurisdiction of the court whose judgment is under attack will override application of the res judicata principle. See United States v. Eastport Steamship Corp., 2 Cir., 1958, 255 F.2d 795, 803–804.

(g) The final Supreme Court case, Jackson v. Irving Trust Co., 1941, 311 U.S. 494, 61 S.Ct. 326, 85 L.Ed. 297, evidently gave the Court no concern as to considerations of overriding policy. An action had been brought against the Alien Property Custodian. One of the defenses raised suggested that the claimants were "enemies" within the meaning of the governing act and were precluded from recovery. This issue was decided against the government. No appeal was taken. Some years later the government moved to set aside the earlier decree on the ground of lack of jurisdiction. The Supreme Court held that the prior adjudication precluded further inquiry, rejected an argument resting on governmental immunity, and said, p. 503, p. 330 of 61 S.Ct.:

"[W]hen the dismissal of the suit was asked by counsel for the Government on the ground that Sielcken was an enemy under the Act, the issues thus raised were the same as those which pertained to the so-called 'jurisdictional' question of right to sue * * *. However the issues were labeled the court was authorized to determine them. * * * If the District Court had erred in dealing, or in failing to deal, with any issue thus involved, the remedy was by appeal and no appeal was taken." [4]

■■ To be able to extract from this series of cases a short and simple governing rule is perhaps too much to expect. Our own analysis of these cases coincides with the comprehensive, although complex, statement propounded by the American Law Institute subsequent to the appearance of its 1934 caveat, footnote 3, supra, and in replacement of that caveat. This statement was developed and presented by the Institute in its 1942 Restatement of the Law of Judgments and in the 1948 revision of § 451 of its Conflicts Restatement. After leaving unchanged its position with respect to a prior adjudication of jurisdiction over the person (that such a determination is not open to collateral inquiry where the defendant had appeared to object to the jurisdiction), § 9 of the Judgments Restatement and § 451(1) of

---

4. Lower court opinions on the subject over the years are numerous. Most of these repeat general rules and, in view of the Supreme Court cases which have been cited, we make no attempt to analyze them. Illustrative Eighth Circuit cases are Foltz v. St. Louis & S. F. Ry., 1894, 60 F. 316; Hartford Life Ins. Co. v. Johnson, 1920, 268 F. 30; Walling v. Miller, 1943, 138 F.2d 629; cert. den. 321 U.S. 784, 64 S.Ct. 781, 88 L.Ed. 1076; and Mitchell v. Village Creek Drainage Dist., 1946, 158 F.2d 475. Compare Krone v. Lacy, 8 Cir., 1962, 305 F.2d 245.

the Conflicts Restatement, it is said, § 10 and § 451(2), respectively:

"Where a court has jurisdiction over the parties and determines that it has jurisdiction over the subject matter, the parties cannot collaterally attack the judgment on the ground that the court did not have jurisdiction over the subject matter, unless the policy underlying the doctrine of res judicata is outweighed by the policy against permitting the court to act beyond its jurisdiction. Among the factors appropriate to be considered in determining that collateral attack should be permitted are that

"(a) the lack of jurisdiction over the subject matter was clear;

"(b) the determmination as to jurisdiction depended upon a question of law rather than of fact;

"(c) the court was one of limited and not of general jurisdiction;

"(d) the question of jurisdiction was not actually litigated;

"(e) the policy against the court's acting beyond its jurisdiction is strong."

The Judgments Restatement contains comments interspersed with illustrations obviously based upon the Supreme Court cases cited above and the Conflicts Re-

statement revision makes specific reference to Davis, Gottlieb and Treinies.

We regard this as a correct statement of the law as the Supreme Court has developed it. We must then apply it to the facts presently before us.

We have a situation where land is in issue and where that land lies either in Nebraska or in Missouri. The determination of that question on the merits obviously coincides with the determination of the question of jurisdiction itself. The two courts involved are those of the adjoining states in one of which the land must lie. The Nebraska courts decided in favor of Nebraska. The Missouri federal court says it would have decided in favor of Missouri had it not felt itself bound by res judicata. With land at issue, we seem to have a factual situation of first impression.[5]

It is immediately evident that none of the first four factors mentioned by the Restatements as among those appropriate for consideration on the question of collateral attack are present here: The Nebraska courts' lack of jurisdiction is not particularly clear. The dispute is almost entirely one of fact rather than of law.[6] The Nebraska courts were certainly courts of general jurisdiction. And the jurisdictional question was fully litigated.[7] This leaves among the stated

---

5. Fifty years ago the identical jurisdictional issue was raised in this court. Whiteside v. Norton, 8 Cir., 1913, 205 F. 5, 45 L.R.A.,N.S., 112, cert. den. 232 U.S. 726, 34 S.Ct. 603, 58 L.Ed. 816, appeal dismissed 239 U.S. 144, 36 S.Ct. 97, 60 L.Ed. 186. The issue there concerned title to a small island which had formed in the St. Louis River where that river constitutes the boundary between Minnesota and Wisconsin. The defendant claimed that the federal circuit court for the district of Minnesota "was without jurisdiction, for the reason that the land in controversy is in the state and district of Wisconsin, and therefore beyond the jurisdiction of the federal court sitting in Minnesota." This court decided the controversy on the merits and said, p. 13 of 205 F.:

"It is also urged that * * * because this is an action in rem, and the

land in the state of Wisconsin, the Minnesota court is without jurisdiction for that reason? These contentions raise questions of serious moment; but, in view of the conclusion reached upon the merits of the controversy, it is deemed unnecessary to extend this discussion further."

This court therefore came right up to the issue presently before us but was able to avoid deciding it.

6. The parties are not in disagreement as to the law concerning the effect of accretion and avulsion upon mid-channel state boundaries. See Nebraska v. Iowa, 1892, 143 U.S. 359, 370, 12 S.Ct. 396, 36 L.Ed. 186.

7. The Durfees place particular emphasis upon the fact that the issue of subject-matter jurisdiction was litigated in the Nebraska proceeding. This fact, al-

factors only the fifth one resting on policy. Is there, then, a strong policy in this kind of case against a court's acting beyond its jurisdiction?

We could take the position that where four of the five stated factors are absent and where we are concerned with decisions of courts of primary jurisdiction of only those states where the land could possibly be located, and where the jurisdictional inquiry necessarily coincides with the merits, the principle of res judicata should prevail. This would amount to a recognition, as the Supreme Court observed in Gottlieb, supra, p. 172 of 305 U.S., p. 138 of 59 S.Ct., that "There is no reason to expect that the second decision will be more satisfactory than the first." There would be little legal illogic in such a holding and it would parallel the situation as to jurisdiction over the person.

We must recognize, however, that considerations of policy are present and at play in the situation before us and that it is policy which constitutes the fifth factor. We are here concerned with judicial disposition of real estate and we are here confronted with the traditional policy of immunity of a state's real property from direct disposition by a sister state's judgment.

There are Supreme Court expressions suggesting the existence of a real estate policy of this kind:

1. The earlier Supreme Court cases which refused to apply the principle of res judicata in problems of subject-matter jurisdiction and which permitted collateral inquiry were primarily real property cases. Many of these have been cited above.

2. The later Supreme Court cases which apply the barrier of res judicata do not concern real estate and strongly indicate that they were not intended to control real property situations. Thus in the bankruptcy case of Stoll v. Gott-

lieb, supra, the Court said, p. 176 of 305 U.S., p. 139 of 59 S.Ct.:

"To appraise the cases dealing with status and transfer of title to real estate seems outside the scope of the present inquiry. The rule applied here may or may not be applicable in instances where the courts with jurisdiction of the later controversy are passing upon matters of status and real estate titles."

A comparable reservation appears in United States v. United States Fidelity & Guaranty Co., supra, where the Court, in speaking of its holding in Chicot, and seemingly limiting it, said, p. 514 of 309 U.S., p. 657 of 60 S.Ct.:

"In the *Chicot County* case no inflexible rule as to collateral objection in general to judgments was declared. We explicitly limited our examination * * *. No examination was made of the susceptibility to such objection of numerous groups of judgments concerning status, extra-territorial action of courts, or strictly jurisdictional and quasi-jurisdictional facts." (footnotes omitted).

Compare the language in McCormick v. Sullivant, 1825, 23 U.S. (10 Wheat.) 192, 202, 6 L.Ed. 300.

3. Certain of the cases which hold that the full faith and credit clause does not preclude collateral inquiry into subject-matter jurisdiction reveal particular fervor with respect to extra-territorial in rem judgments of state courts. See Carpenter v. Strange, 1891, 141 U.S. 87, 105–106, 11 S.Ct. 960, 35 L.Ed. 640; Fall v. Eastin, 1909, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65; Olmsted v. Olmsted, 1910, 216 U.S. 386, 30 S.Ct. 292, 54 L.Ed. 530; Hood v. McGehee, 1915, 237 U.S. 611, 35 S.Ct. 718, 59 L.Ed. 1144; Grover & Baker Sewing Machine Co. v. Radcliffe, supra, p. 296 of 137 U.S., 11 S.Ct. 92; Williams v. North Carolina, 1942, 317 U.S. 287, 294, footnote 5, 63

though often relied upon, is not necessarily determinative. It is only one of the several factors appropriate for con-

sideration under the Restatement rule. See Judgments Restatement, § 10, comment c.

S.Ct. 207, 87 L.Ed. 279; and Milwaukee County v. M. E. White Co., 1935, 296 U.S. 268, 273–274, 56 S.Ct. 229, 80 L.Ed. 220.

4. Several Supreme Court dicta are significant although they were pronounced under wholly distinguishable circumstances. In Pennoyer v. Neff, supra, p. 720 of 95 U.S., the Court said:

> "The authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established. Any attempt to exercise authority beyond those limits would be deemed in every other forum, as has been said by this court, an illegitimate assumption of power, and be resisted as mere abuse."

In Huntington v. Attrill, 1892, 146 U.S. 657, 669, 13 S.Ct. 224, 36 L.Ed. 1123, it was said:

> "Proceedings *in rem* to determine the title to land must necessarily be brought in the State within whose borders the land is situated, and whose courts and officers alone can put the party in possession."

See also the quotation, supra, from Noble v. Union River Logging R. R., p. 173 of 147 U.S., 13 S.Ct. 271.

5. Any apparent out-of-jointedness of the older case of Forsyth v. Hammond, supra, can be explained by the absence there of a multi-state conflict and by the natural hesitation of the Court to intrude upon what it felt was a matter involving construction by state courts of a state's constitution and statutes. See pp. 518–519 of 166 U.S.. 17 S.Ct. 665.

■ ■ We are aware that a state itself is evidently not bound by res judicata by the results of litigation between private parties which has an indirect bearing upon the state's interest but to which the state was not a party. United States v. Lee, 1882, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171; Land v. Dollar, 1947, 330 U.S. 731, 736–737, 67 S.Ct. 1009, 91 L.Ed. 1209. Nevertheless, we are inclined to feel that the courts of a state

which is directly and adversely affected by the first forum's determination in its state's favor of the situs of land as between the two states should be able properly to inquire into the jurisdictional grounds of the first holding and should not be prevented from so doing by an immovable concept of res judicata. Of course, boundary matters, where directly contested between states themselves, fall within the original jurisdiction of the Supreme Court by Article III, § 2 of the Constitution. See Missouri v. Nebraska, 1904, 196 U.S. 23, 25 S.Ct. 155, 49 L.Ed. 372. But a state's sovereignty, the validity of its own land titles and its power to tax, can be affected, although indirectly, by proceedings of the very kind which have taken place here. It seems not unreasonable or improper, therefore, as a matter of policy where land is concerned, to allow a court of the affected state the opportunity to satisfy itself as to the first forum's subject-matter jurisdiction. Permitting collateral attack does not mean that the attack is always successful. See Grubb v. Public Utilities Comm'n, supra, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972. Compare Moore v. Rone, Mo.App., 1962, 355 S.W.2d 398.

■ After careful consideration we conclude that, for a land case such as this, a policy of careful recognition of jurisdictional limitations and of permitting inquiry into the basis of subject-matter jurisdiction outweighs any conflicting res judicata principle. We feel that as a matter of basic legal philosophy the question of excessive judicial action by way of claimed jurisdiction over land presents a fundamental and classic situation where validity may be a proper subject of inquiry despite opposing considerations in favor of the termination of litigation. We therefore hold that the United States District Court for the Western District of Missouri in this case had the power to make collateral inquiry as to the jurisdictional basis of the Nebraska judgment.

As we have noted, the trial court in its findings and memorandum, clearly indicated that it was its conclusion on the

221

merits that the land was Missouri land at the time Julia Duke received her swamp land deed. Although we feel that this conclusion finds ample support in the record, we deem it advisable, rather than to reverse with specific directions, to return the entire case to the district court so that it may take such further action on the merits of the main suit and on the cross-complaint as it feels is now indicated by the results we have reached here. Of course, if Julia prevails in the main action, the cross-complaint for an accounting and an injunction will necessarily be decided adversely to the Durfees.

The judgment below is therefore reversed and the case is remanded for further proceedings consistent with the views herein expressed.