John SCHROEDER, Roy M. Harrop and Homestead Corporation, Appellants

v.

171.74 ACRES OF LAND, MORE OR LESS, United States of America, Ned Tyson and Irma Tyson, Appellees.

No. 17216.

United States Court of Appeals Eighth Circuit.

June 3, 1963.

Rehearing Denied June 27, 1963.

Frank L. Burbridge, Omaha, Neb.,. and Roy M. Harrop, Omaha Neb., for appellants.

James F. Green, Omaha, Neb., Reed O'Hanlon, Sr., Blair, Neb., on the brief, for appellees.

Before JOHNSEN, Chief Judge, MATTHES, Circuit Judge, and GIBSON, District Judge.

MATTHES, Circuit Judge.

The broad issue in this case is whether title to certain real estate condemned by the United States under power of eminent domain was vested in John Schroeder, Roy M. Harrop and Homestead Corporation (now American Cooperative Company), hereinafter referred to as appellants, or in Ned Tyson and Irma Tyson, his wife, hereinafter referred to as appellees.[1] The right of the Government to condemn the land is conceded by all parties and is not an issue on this appeal. Judgment on the declaration of taking was duly entered, and the amount estimated by the acquiring authority as just compensation for the land, $11,470, was deposited in the registry of the United States District Court for the District of Nebraska.

The United States District Court found that appellees were the owners of

1. The United States, pursuant to statutory authority, instituted the eminent domain action to acquire property for the purpose of improving, maintaining and stabilizing a channel in the Missouri River for navigation and for uses incident to navigation.

the land, and thus they would be entitled to the money on deposit. Sub nom. United States v. 171.74 Acres of Land, etc., D.Neb., 206 F.Supp. 322 (1962). Basing its decision upon the doctrine of res judicata, the United States District Court followed the judgment of the District Court of Washington County, Nebraska, affirmed on appeal, Schroeder v. Homestead Corp., 171 Neb. 792, 107 N.W.2d 750 (1961), cert. denied, Schroeder v. Williams, 368 U.S. 32, 82 S.Ct. 146, 7 L. Ed.2d 90 (1961)—a judgment that held that the Tysons were the owners in fee simple of the tract of land involved herein and that appellants had no right, title or interest therein.

A brief resume of the pertinent facts will aid in understanding the position of the parties and the basis for the lower court's decision.

Of the 171.74 acres that were condemned, 100.79 acres, more or less, the subject of this litigation, were designated as "Tract No. A–100E (Nebraska)" in the condemnation complaint. It was further alleged that this land was situated in Washington County, Nebraska, and that the "persons having or claiming an interest in the property whose names are ascertainable by a reasonably diligent search of the records * * * are Ned Tyson * * *."

Appellants intervened in the condemnation proceeding and asserted ownership of the tract of land in dispute based upon certain tax deeds issued to them in Iowa, and upon a judgment of the District Court for Harrison County, Iowa,

finding them to be the fee simple owners of the land.[2] The attempt by appellants Schroeder and Harrop to register and enforce the Iowa judgment in the Washington County, Nebraska court under the Uniform Enforcement of Foreign Judgments Act, §§ 25–1587 to 25–15,104, R.R.S.1943, gave rise to the Washington County, Nebraska judgment—a judgment that appellants attempted to collaterally attack as a nullity in this condemnation proceeding, alleging that the land is not in Washington County, Nebraska, and therefore that the Nebraska court lacked jurisdiction.[3]

The Tysons denied the claim of appellants, alleged that they were the owners in fee simple of Tract A–100E (Nebraska); that said tract was wholly and entirely located within Washington County, Nebraska; that their ownership of the land and its location in Washington County, Nebraska, had been determined by the District Court of Washington County, Nebraska, after a thorough trial in which both the Tysons and appellants herein were parties; and that the judgment of that court was res judicata as to the location and ownership of the land. In holding that fee simple title to the land in controversy was held by the Tysons, the Nebraska state court had found in pertinent part that:

(1) The judgment of the Harrison County, Iowa District Court was void since it lacked jurisdiction over the land, all of which was in Nebraska and not in Iowa.

(2) Since the Iowa judgment was void, it was not entitled to registration as a

---

2. It is interesting to note that in a condemnation action involving tracts of land contiguous to the tract here involved and in which appellants and appellees were among the numerous parties to the suit, the United States District Court for the Southern District of Iowa found (unreported opinion, 1959) that the asserted tax titles alleged by Harrop and Schroeder to have been obtained through tax deeds from Harrison County, Iowa, were invalid. In the appeal to this court, Tyson v. State of Iowa, 8 Cir., 283 F.2d 802, 805 (1960), we did not reach the question of the validity of the tax titles.

3. Appellants attached as appendices to their reply brief in the court below certified copies of both the decree and judgment of the Washington County, Nebraska district court (filed April 12, 1960) and the judgment and decree of the Harrison County, Iowa district court (No. 18,376, filed December 30, 1952). The Nebraska decree specifically found the Iowa decision (No. 18,376) to be void. The Tysons were not named as parties in the Iowa action, and were not mentioned in the body of the Iowa court decree.

foreign judgment or to full faith and credit.

Motion for summary judgment filed by appellants in this action was denied and following a plenary trial, the court found that:

"[T]ract A–100E (Nebraska) is located within the boundaries of Tax Lot 1, Sec. 7, Township 19 North, Range 12, East of the 6th Principal Meridian in Washington County, Nebraska, and in recognition of the previous actions taken by the courts of Nebraska holds that title to said land is in defendants Tyson, and that defendants Schroeder, Harrop and Homestead Corp. have no right, title or interest therein." 206 F.Supp. at 326.

Thus, it becomes apparent that the narrow question on appeal is whether the federal court below erroneously determined that the adjudication in the Nebraska courts was conclusive and dispositive of the title issue which appellants sought to relitigate in this case.

■ Generally stated, under the doctrine of res judicata an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. 30A Am.Jur., Judgments § 324; Treinies v. Sunshine Mining Co., 308 U.S. 66, 78, 60 S.Ct. 44, 84 L.Ed. 85 (1939); Stoll v. Gottlieb, 305 U.S. 165, 171–173, 59 S.Ct. 134, 83 L.Ed. 104 (1938); American Surety Co. v. Baldwin, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231 (1932); Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 524–526, 51 S.Ct. 517, 75 L.Ed. 1244 (1931); Forsyth v. Hammond, 166 U.S. 506, 516–518, 17 S.Ct. 665, 41 L.Ed. 1095 (1897); Anderson v. Anderson, 155 Neb. 1, 50 N.W.2d 224 (1951); Baum v. McBride, 152 Neb. 152, 40 N.W.2d 649 (1950). See also Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), and other authorities cited and discussed in Duke v. Durfee, 8 Cir., 308 F.2d 209 (1962).

■■ The doctrine is but a manifestation of the recognition that endless litigation leads to chaos; that certainty in legal relations must be maintained; that after a party has had his day in court, justice, expediency, and the preservation of the public tranquillity requires that the matter be at an end. 30A Am. Jur., Judgments § 326. See also Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948); Baldwin v. Iowa State Traveling Men's Ass'n, supra, 283 U.S. at 525, 51 S.Ct. at 518.

"It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first." Stoll v. Gottlieb, supra, 305 U.S. at 172, 59 S.Ct. at 137.

The Stoll opinion, 305 U.S. at 173, 59 S.Ct. at 138, also reiterated the long-established rule that a former judgment in a state court is conclusive between the parties and their privies in a federal court when entered upon an actually contested issue as to the jurisdiction of the court over the subject matter of the litigation.

With these basic principles in mind we give further consideration to the question before us. The record makes it abundantly clear that the Missouri River originally served as the boundary line between Iowa and Nebraska, that the former or old channel of the Missouri River was west of the tract of land with which we are concerned, and that apparently the tract was at one time in Iowa. However, as a result of the eastward shift of the river, the tract became situated west of the new channel. Such changes in the river's course created troublesome

boundary problems, which led to the enactment of the Iowa-Nebraska Boundary Compact in 1943, whereby a new boundary line between those states was described and established. See ratification by Iowa Legislature, approved April 15, 1943, Iowa Code Ann., Vol. 1, p. 85, also included in Reissue Revised Statutes of Nebraska 1943, Vol. 2A, pp. 663–665; ratification by Nebraska Legislature, approved May 7, 1943, Reissue Revised Statutes of Nebraska 1943, Vol. 2A, pp. 662–663; Act of July 12, 1943, Ch. 220, 57 U.S.Stat. at Large 494. The establishment of the new boundary line caused the land in question to be situated in and under the jurisdiction of the State of Nebraska. Indeed, in their brief filed in this court, appellants frankly admit that "all of Tract A–100E (Nebraska) (the land involved in this appeal) lies *west* of the middle of the 1943 stabilized channel, and thus today (and since the effective dates of the 1943 Iowa-Nebraska Boundary Compact) is to be part of the State of Nebraska."

Notwithstanding this concession, and relying upon the original survey and description of the tract here involved and other lands contiguous thereto, appellants urgently insist that the tract remained in and subject to the jurisdiction of the State of Iowa, and the Nebraska decision was therefore void for want of jurisdiction. Appellants' technical assertion that the tract is Iowa land because the only "authorized" survey shows it to be in Iowa despite the fact that the tract was concededly made a part of Nebraska by the 1943 boundary compact is clearly without merit. The inconsistency of their position is revealed throughout their brief by such assertions as the tract is "west of the middle of the 1943 stabilized channel, in Harrison County Iowa established by the U. S. Army Engineers, and now within the territorial limits of the State of Nebraska under the Iowa-Nebraska Boundary Compact on Harrison Co. Iowa Land."

Alternatively, appellants contend that in the event the Nebraska state courts had jurisdiction, they erred in failing to give effect to § 3 of the Ratification Act, supra, which provides that "[t]itles, * * * good in Iowa shall be good in Nebraska as to any lands Iowa may cede to Nebraska, and any pending suits or actions concerning said lands may be prosecuted to final judgment in Iowa and such judgment shall be accorded full force and effect in Nebraska." In contending that the United States District Court in this proceeding was required to again examine, consider and adjudicate the two basic contentions of appellants without regard to the final judgment of the Nebraska court, appellants rely almost entirely upon our holding in Duke v. Durfee, supra, (September 18, 1962, subsequent to decision by lower court here), 8 Cir., 308 F.2d 209.

Apart from the present unsettled status of the Duke case by reason of the granting of the petition for certiorari on January 7, 1963, 371 U.S. 946, 83 S.Ct. 509, 9 L.Ed.2d 496, it is readily apparent that appellants have misconceived the purport of our holding in that case, probably because of their failure to recognize its basic distinguishing features. In Duke, the central and key issue was whether the land was in Nebraska or Missouri, and thus the jurisdiction or power of the Nebraska court to litigate this issue was clearly brought into question. The Nebraska court, holding that the disputed land was within that state, adjudicated the title issue adversely to Julia E. Duke, who contended the land was in Missouri. See Durfee v. Keiffer, 168 Neb. 272, 95 N.W.2d 618 (1959). In a subsequent action by Duke instituted in Missouri, the United States District Court for the Western District of Missouri, after a trial, concluded the land was in Missouri, but dismissed the complaint on the ground that the matter was res judicata because of the Nebraska judgment. For reasons appearing in the opinion, we held that the United States District Court in Missouri had the power to make collateral inquiry as to the jurisdictional basis of the Nebraska judgment.

Here, unlike Duke, the parties attacking the jurisdiction of the state court (Nebraska) in the federal court are the very parties who originally invoked that state court's jurisdiction. Like Duke, the Nebraska state court was a court of general jurisdiction; the same and identical parties were the contesting parties in both the state and federal proceedings; and the ownership of the disputed land was fully litigated in the state trial and the decision was affirmed by the highest court of the state. In Duke, no attempt was made to obtain a review of the Nebraska decision by the United States Supreme Court whereas here, petition for certiorari from the Nebraska Supreme Court was denied. But even if the two cases were identical in all of the above-mentioned respects, the Duke case would not be controlling here. For the record conclusively establishes that since the 1943 Iowa-Nebraska Boundary Compact, the tract here in question has been west of the boundary line established by virtue of the compact, and is situated in and is a part of the State of Nebraska. Despite the superficial assertions by appellants to the contrary, here, unlike Duke, there can be no doubt that the tract is in Nebraska and that the Nebraska state court, and not the Iowa state court, thus possessed jurisdiction over the subject matter. Every state possesses exclusive jurisdiction and sovereignty over property within its territory, and conversely, no state can exercise direct jurisdiction over property outside its territory. Pennoyer v. Neff, 95 U.S. 714, 722, 24 L.Ed. 565 (1877).

Having demonstrated that the judgment of the Nebraska court is conclusive on the question of ownership of the land, and that the United States District Court in this proceeding was without power to make collateral inquiry as to the jurisdiction of the Nebraska court, the argument that the latter failed to give full faith and credit to the Iowa state court judgment is rendered impotent. Determination of the force and effect of that judgment was plainly within the competence of the District Court of Washington County, Nebraska. Its resolution of that issue cannot permissibly be attacked in this action.

Affirmed.