**Warren D. CLEM et al.,
Plaintiffs,**

v.

**COOPER COMMUNITIES, INC., et al.,
Defendants.**
**Charles S. Graves et al., Intervenors.**

**No. B–71–C–26.**

United States District Court,
E. D. Arkansas, N. D.

June 27, 1972.

Terry L. Mathews of Wright, Lindsey & Jennings, Little Rock, Ark., for plaintiffs.

Leon B. Catlett of Catlett & Henderson, Herschel H. Friday of Smith, Williams, Friday, Eldredge & Clark, Little Rock, Ark., John Mac Smith, West Memphis, Ark., for defendants.

J. E. Lightle, Jr. of Lightle, Tedder & Hannah, Searcy, Ark., for intervenors.

Before MATTHES, Chief Circuit Judge, HENLEY, Chief District Judge, and WILLIAMS, District Judge.

HENLEY, Chief District Judge:

Plaintiffs in this class action attack the constitutionality of Arkansas Act 41 of 1941, as amended, Ark.Stats., Ann., § 20–701 et seq., which provides for the creation and operation of suburban and rural improvement districts in Arkansas, on the ground that it is violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. The defendants

are Cooper Communities, Inc., formerly John A. Cooper Land Co., and the three Commissioners of Cherokee Village Road and Street, Recreational and Fire Department Suburban Improvement District No. 1. Plaintiffs are the owners of property within the District. Six hundred and forty-three other property owners have intervened in the case and have aligned themselves on the side of the defendants. American Civil Liberties Union of Arkansas, Inc. has been permitted to file an amicus curiae brief.

Since Act 41, including amendments, is a statute of State wide application and since plaintiffs seek to enjoin the Commissioners of the District from operating under the statute on the ground that it is unconstitutional, the case has been heard by this three judge court. 28 U.S.C.A. § 2281.[1]

The constitutional claim put forward by plaintiffs, which will be stated in due course, is a serious one in the abstract. However, we are persuaded that on the record before us and for reasons to be stated plaintiffs are not entitled to any relief and we dismiss the complaint.

The District involved in this case was formed in 1969 and is co-terminous with the residential development known as Cherokee Village. Cherokee Village is an unincorporated community consisting of several thousand acres of land located in Sharp and Fulton Counties, Arkansas; the greater part of the land is in Sharp County. The development was established in 1954 by the John A. Cooper Land Co.[2] and is sometimes referred to as a "retirement village" since the developer's design was to sell the lots in the development to persons for use as homes after retirement.

Company subdivided the area into a great many individual lots of which about 23,000 have been sold. Most of them were sold on installment credit with legal title being retained by Company during the lives of the contracts. When a purchaser completes his payments, he receives a deed to the property. The record reflects that as of March 1, 1972, 22,948 lots had been sold, and that deeds covering 9,142 of those lots have been executed and delivered.

According to the deposition of John A. Cooper, Jr., in late April 1969 there were 1,111 dwellings in Cherokee Village of which 404 were occupied full time; the rest were occupied on a part time basis. As to the 404 dwellings that were occupied all of the time, Mr. Cooper estimated that each of those dwellings housed from two to three individuals. Doubtless, there has been additional construction in the development since 1969.

As part of the development Company constructed and paved certain streets and also constructed substantial recreational facilities including a country club and a riding stable. The initial cost of the improvements, including the recreational facilities, was passed on to lot purchasers, but Company has been maintaining the facilities at substantial cost to itself each year. Company has been maintaining the roads and streets and has provided at least some degree of police protection to residents. Company has also provided a garbage collection system and has installed a sewer system. Residents obtain their water from Quapaw Water Co., a wholly owned subsidiary of Company; they obtain electricity, gas, and telephone service from private utilities in which Company has no interest. What businesses there are in the development are owned by Company.

It is probably fair to say that John A. Cooper is the dominating figure in Company. The individual defendant, John A. Cooper, Jr., is his son, and the individual defendant, Joe Basore, is his son-in-law; both of those defendants are Company executives. The third individ-

1. By agreement the writer sitting as a single judge heard the testimony which was duly transcribed. The full Court has considered the transcript, exhibits, and briefs and has heard oral argument.

2. That corporation and its successor will be referred to herein as Company.

ual defendant, Joseph Basehart, is a retired person who has no connection with Company. The three individuals just mentioned own property in Cherokee Village and collectively make up the Board of Commissioners of the District and have full control of its affairs.

The District was created by order of the Circuit Court of Sharp County in the summer of 1969 for the purposes of building and maintaining roads and streets, taking over, maintaining and operating the recreational facilities that have been mentioned, and providing fire protection for residents. As far as the recreational facilities are concerned, Company proposes to donate them to the District, and the Commissioners propose to accept the donation and maintain and operate the facilities by means of funds derived from assessments against all of the lots located in the District, including unsold lots still belonging to Company. There is no question that the objects of the District are authorized by Act 41, and there is no question that the Commission is proceeding or is about to proceed unless enjoined in the manner authorized by the Arkansas statutes.

In accordance with the statute the Commissioners were appointed by the Circuit Court. They have no fixed terms and can be removed only upon the petition of persons owning property in the District representing more than two-thirds of the assessed valuation of all of the land in the District. If a vacancy occurs on the Board of Commissioners, it is filled by the remaining Commissioners. Subject to certain restrictions in the statutes, the Commissioners have broad fiscal and managerial powers with respect to the District, its affairs, and property.

Plaintiffs commenced this action originally for the limited purpose of restraining the Commissioners from accepting Company's proposed donation of the recreational facilities and thereafter maintaining and operating them by means of assessments against lots of Cherokee Village. However, the final position assumed by plaintiffs is that Act 41 itself is unconstitutional as being violative of the Equal Protection Clause, and they now seek an adjudication to that effect and an injunction restraining the Commissioners from taking any official action whatever under that Act.

The Equal Protection argument of plaintiffs may be summarized substantially as follows: Cherokee Village is a "de facto city," and the powers vested in the appointed Commissioners by the statutes are actually governmental powers usually exercised in incorporated cities and towns by elected officials. In such circumstances the Equal Protection Clause requires that the Commissioners be chosen originally by a conventional elective process incorporating the one man, one vote principle, and that thereafter they be subject periodically to the judgment of the electors as to whether they should continue in office. The plaintiffs contend that the system established by Act 41 unconstitutionally discriminates against "small landowners" in the District; they also contend that the statutory scheme discriminates against all inhabitants of an Act 41 district in that they are governed by appointed officials whereas inhabitants of regularly incorporated cities and towns are governed by persons elected by popular vote. As to this particular District plaintiffs argue that in view of the relationship between Messrs. Cooper and Basore, on the one hand, and Company, on the other hand, the District is but the alter ego of Company, and that Company will remain in effective control of the District even after all of the lots in Cherokee Village have been sold. Plaintiffs are supported in their position by the amicus.

The defendants and intervenors deny that plaintiffs' constitutional claims have merit, they also contend that the constitutional claim of plaintiffs could have been put forward in litigation in the State courts of Arkansas which culminated in the decision of the Arkansas Supreme Court in Cherokee Village Homeowners Protective Association v. Cherokee Village Road and Street Im-

provement District No. 1, 1970, 248 Ark. 1055, 455 S.W.2d 93,[3] and they plead that decision as res judicata here. We find it convenient to consider that plea first.

It is fairly inferable that the continued maintenance and operation of the recreational facilities in Cherokee Village is vital to the maintenance of property values there, but when the development was first established in 1954 no provision was made for maintenance and operation after all of the lots should be sold. While the facilities themselves produce some income, they have been operated with substantial deficits every year which deficits have been made up by Company. However, at least as far as the present record shows, Company is not under any obligation to lot purchasers to continue to maintain them and will have no financial interest in doing so after it finally disposes of all or substantially all of its lots. The problem of the facilities has been recognized for a number of years by Company and by lot owners, and by about 1967 it had been determined that the best way to solve the problem would be to form an Act 41 district and turn the improvements over to it.

As of that time Act 41 was not broad enough to authorize a rural or suburban district to acquire and operate recreational facilities, and Company officials, notably Mr. Basore, sought and obtained from the Legislature an enabling amendment to the Act, Act 286 of 1967. That statute, among other things, authorized an Act 41 district to acquire by donation or otherwise recreational facilities and to maintain and operate them.

In the spring of 1969 Company joined by more than 1,000 individual lot owners filed a petition in the Circuit Court of Sharp County for the formation of the District. The petitioners collectively owned a "majority" of the real estate in the proposed district considered from the standpoint of both area and value.

The petition was resisted by 163 individual lot owners who at some stage joined themselves together as the Cherokee Village Homeowners Protective Association. Those people, including five of the six plaintiffs in this case, contended in the Circuit Court that Act 41 was unconstitutional as being an unlawful delegation of legislative authority and as authorizing a deprivation of property without due process of law in violation of the Fourteenth Amendment. They also contended that the contemplated appointment of Messrs. Basore and Cooper to the Board of Commissioners violated the then rather narrow prohibition against conflicts of interest appearing in Act 41. They did not allege in terms any violation of the Equal Protection Clause upon which the plaintiffs rely here.

The Circuit Court considered and rejected all of the contentions of the remonstrants and specifically held that Act 41 did not deprive the remonstrants of property without due process of law or of any other right protected by the Constitution of the United States or that of the State of Arkansas. In due course an order was entered creating the District and appointing Commissioners.

The remonstrants, acting through their Association, appealed from that order to the Arkansas Supreme Court. On June 15, 1970, that Court affirmed the Circuit Court. *Cherokee Village,* supra. In its opinion the Supreme Court discussed, as had the Circuit Court, the conflict of interest claim, the delegation claim, and the due process claim. It did not discuss the Equal Protection Clause. The Association could have appealed from that decision to the Supreme Court of the United States as a matter of right, 28 U.S.C.A., section 1257(2), but it did not do so, and the litigation was

3. The name of the District appearing in the caption of the opinion of the Arkansas Supreme Court differs slightly from the name appearing in this record; the difference is not material; there is only one improvement district in Cherokee Village.

simply abandoned until the take-over of the recreational facilities became imminent in the summer of 1971. Plaintiffs then employed counsel other than those who had represented the remonstrants in the State court proceedings and commenced this action.

By that time Act 41 had been amended by Act 360 of 1971 which, among other things, strengthened the conflict of interest provision of the original statute. By reason of the close relationship of defendants Cooper and Basore to Company, the District under Act 360 cannot accept the proposed donation of the facilities without the prior approval of the Circuit Court of Sharp County to be obtained only after notice and hearing. In view of the pendency of this suit the District has simply not applied to the Circuit Court for any approval of the acquisition of the facilities and the situation has remained in status quo.

The doctrine of res judicata was stated by the Court of Appeals for this Circuit in St. Louis Typographical Union No. 8 v. Herald Co., 8 Cir., 1968, 402 F. 2d 553, 555–556, as follows:

"The doctrine of res judicata is a principle of universal jurisprudence. It should be applied to bring litigation to an end where it is correct and just to do so. The Supreme Court articulated the doctrine in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1947) as follows:

" 'The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. See Von Moschzisker, "Res. Judicata," 38 Yale L.J. 299; Restatement of the Law of Judgments, §§ 47, 48.'

"As we aptly pointed out in Schroeder v. 171.74 Acres of Land, 318 F.2d 311, 314 (8th Cir. 1963):

" 'The doctrine is but a manifestation of the recognition that endless litigation leads to chaos; that certainty in legal relations must be maintained; that after a party has had his day in court, justice, expediency, and the preservation of the public tranquility requires that the matter be at an end.' (Citing cases.)"

The position of the defendants and intervenors on this phase of the case is that the constitutional issue presented here was or could have been presented to the Supreme Court of Arkansas in *Cherokee Village*, supra, and that there is substantial, although not literal, identity between the parties in that case and in this one.

The plaintiffs do not dispute the well established proposition that if a party voluntarily and without reservation submits a federal question, including a federal constitutional question, to a State court of competent jurisdiction and suffers an adverse ruling which becomes final by reason of lack of review by the Supreme Court of the United States, the final judgment of the State court is res judicata of the federal question in later litigation in federal court between the same parties or their privies, and that this is true even though the State court's determination of the federal question may have been erroneous. England v. Louisiana State Board of Medical Examiners, 1967, 375 U.S. 411,

84 S.Ct. 461, 11 L.Ed.2d 440; Angel v. Bullington, 1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832; Rooker v. Fidelity Trust Co., 1923, 263 U.S. 413, 44 S.Ct. 140, 68 L.Ed. 362; Jones v. Hulse, 8 Cir., 1968, 391 F.2d 198.

It is clear that the Equal Protection argument advanced here was either in fact presented to the Arkansas courts or could have been, and we do not understand that plaintiffs contend to the contrary. What the plaintiffs do contend is that there is a lack of substantial identity between the parties before the Court in this case and the parties before the Arkansas courts, and they urge that this asserted lack of substantial identity of parties is fatal to the claim of res judicata.

The position of the plaintiffs is that *Cherokee Village* involved nothing but the consideration of the remonstrances of 163 individual landowners against the formation of the District and was not a class action, whereas the instant case is a class action in which plaintiffs are representing a very large number of persons who were not involved in any way in the State court litigation. Plaintiffs also point out that one of their number was not involved in the earlier case. Principal reliance is placed on E. B. Elliott Advertising Co. v. Metropolitan Dade County, 5 Cir., 1970, 425 F.2d 1141. We think that the situation presented here differs from the one presented in that case.

The order entered by this Court permitting the case to be prosecuted as a class action defined the class as consisting of plaintiffs "and other residents, landowners, and purchasers of real property in Cherokee Village, Arkansas, who oppose the creation and operation of the (District)." The order provided that notice of the pendency of the suit be given by publication, and that the notice should advise the members of the class that each member might be excluded from the scope of the case by written request to be filed with the Clerk not later

than Friday, June 9, 1972, the date set for the hearing of oral argument. No person requested to be excluded.

In his brief and in oral argument counsel for plaintiffs has construed the order defining the class as including all Cherokee Village lot owners and purchasers who did not request to be excluded from the suit, except Company, the individual defendants, and the 643 intervenors. And on the basis of that interpretation of the order counsel calculates that the six plaintiffs represent a class consisting of more than 20,000 people.

■ We cannot accept counsel's construction of our order or his definition of the class represented by the plaintiffs. We think that the order is clear and unambiguous, and it defines the class as being composed of individuals who are actually opposed to the creation and operation of the District. Individuals who are not in fact opposed to such creation and operation are not placed in opposition merely because they did not ask to be excluded from the suit.

Under counsel's construction of our order, which we reject, he was able to assume that every Cherokee Village property owner who or which has not by participation in this case stated a position in favor of the creation and operation of the District is aligned with plaintiffs. There is no basis for any such assumption under our construction of our order and our definition of the class represented by plaintiffs.

From the record as a whole we find with respect to property owners who have taken a position on the question that a majority of those people favor the creation and operation of the District and that plaintiffs and others who are opposed to the District are in a minority. As far as property owners who have not stated a position are concerned, we simply do not know what their attitudes are or will be.

While the proceedings that were had in the Circuit Court of Sharp County

were not formally designated as a "class action," it is clear to us that the 163 remonstrants in that Court were in fact an identifiable class of people acting in concert and within the framework of their Association which was the formal party appellant when the case reached the Supreme Court of Arkansas. And we think that the class represented by plaintiffs in this case is essentially the same group or class of people who were involved in the State court litigation.

█ Notwithstanding the fact that one of the six plaintiffs here was not a party to that litigation, we conclude that there is a substantial identity between the parties plaintiff in this case and the remonstrants in the State court. There is no question that there is substantial identity between the District that was the appellee in *Cherokee Village* and the individual defendants in this case who are sued as Commissioners of the District. That Company was not a formal party to the State court litigation is not material.

██ From what has been said it follows that the plea of res judicata must be sustained. While that is dispositive of the case, we deem it well in the interest of economy in judicial time and effort to advert to the merits of plaintiffs' constitutional claim, although we are well aware of the salutary principle that courts should in general refrain from unnecessary constitutional adjudications.

We are not concerned in this case with the wisdom of the actions which the Commissioners contemplate taking, and specifically we are not concerned with whether it is fair, equitable, or just for the District to take over the recreational facilities and maintain and operate them by means of assessments against individually owned parcels of real estate. If and when the Commissioners apply to the Circuit Court for leave to accept the donation of the facilities, plaintiffs and those whom they represent may well have an opportunity to argue such questions before that Court, and if the decision goes against them to seek review by the Supreme Court of Arkansas.

All that we are concerned with here is the constitutionality of the statute under which the Commissioners propose to act. And in this case the constitutional attack on Act 41 is limited to the Equal Protection Clause. In the course of the argument counsel for plaintiffs stated specifically that his clients are not renewing here the due process and other contentions that were considered and rejected by the Supreme Court of Arkansas.

█ While the constitutional argument of plaintiffs has been couched in large measure in terms of the one man, one vote principle, that principle itself is not really involved in this case. The Arkansas statutory scheme expressed in Act 41 and its amendments does not give to property owners a right to vote on certain issues while denying that right to those who do not own property; nor does it give to property owners a ballot veto with respect to measures which may result in their holdings being taxed or assessed against their will even though such measures may be approved by a majority of the voters living in the affected area. Cf. City of Phoenix v. Kolodziejski, 1970, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523; Turner v. Fouche, 1970, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567; Cipriano v. City of Houma, 1969, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647; Kramer v. Union Free School District, 1969, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583; Stewart v. Parish School Board, E.D.La.1970, 310 F.Supp. 1172, aff'd on motion, 400 U.S. 884, 91 S.Ct. 136, 27 L.Ed.2d 129. Nor does the statutory scheme involve any problem of dilution of the voting rights of particular citizens or classes of citizens. See e. g. Hadley v. Junior College District, 1970, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45; Avery v. Midland County, 1968, 390 U.S. 474, 88 S.Ct.

1114, 20 L.Ed.2d 45; Sailors v. Board of Education, 1967, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650; and Reynolds v. Sims, 1964, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506. The electoral process simply does not play any part in the formation, governance, or operation of an Act 41 improvement district in Arkansas.

As we see it, the real question in this case, as far as the merits are concerned, is whether the Equal Protection Clause requires that questions involving the creation, organization, and management of improvement districts be submitted to popular votes. Plaintiffs would have us answer that question in the affirmative at least in the case of multi-purpose suburban or rural districts governed by appointed and self-perpetuating boards of commissioners having broad powers to make decisions and take actions which significantly affect residents of the districts financially and perhaps otherwise. Defendants and intervenors take the contrary position.

Conceding that if a State directs that certain questions must be decided by the electoral process, the elections that it requires must have certain constitutional characteristics, it does not follow that all public questions must be decided by means of elections. In Sailors v. Board of Education, supra, 387 U.S. at 109, 87 S.Ct. 1549, the Court recognized that subject to constitutional restrictions the States have broad discretion in managing their own internal affairs, and then it specifically declined to decide whether a State may constitutionally create "a local legislative body through the appointive rather than the elective process." Ibid at 110, 87 S.Ct. at 1553.

Should this Court accept plaintiffs' contentions serious repercussions would be felt throughout Arkansas. Such a holding would not be confined in effect to Cherokee Village, and, indeed, it might not be confined to Act 41 districts since certain features of that statute which plaintiffs find constitutionally objectionable are also to be found in other general and special Arkansas statutes

dealing with other types of improvement districts. There is no decision of the Supreme Court which compels such a holding, and within the framework of this particular case we are unwilling so to hold.